UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUIS FERNANDEZ | : | PRISONER<br>CIVIL NO. 3:02CV2252 (CFD)(WIG) |
| v. | : | |
| JOHN ARMSTRONG, ET AL. | : | APRIL 27, 2004 |

**DEFENDANTS' MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

This case is a civil rights action by Luis Fernandez, an inmate of the Connecticut Department of Correction, complaining that his civil rights were violated due to alleged delays in the delivery of free hygiene products and free mail to him in 2002. He seeks compensatory and punitive damages and wide-ranging injunctive relief for changes at the institution and personnel decisions concerning defendants. The defendants are six present or former officials of the Connecticut Department of Correction.

We urge the Court to render Summary Judgment for all defendants because:

1. The Eleventh Amendment bars this action against the defendants in their official capacities.

2. The State is not a "person" subject to liability under 42 U.S.C. § 1983.

3. Plaintiff's request for injunctive relief is moot.

4. The Amended Complaint fails to state a claim upon which relief can be granted.

5. The plaintiff has failed to demonstrate personal participation or responsibility.

6. The defendants are protected by their qualified immunity.

7. The Court should decline to accept jurisdiction over any state law claims in this case.

## FACTS

The plaintiff is an inmate of the Connecticut Department of Correction, MacDougall-Walker Correctional Institution in Suffield, Connecticut, currently serving twenty year and eight year sentences for drug convictions. Def. Statement, para. 1. The defendants were, at various times referenced in the plaintiff's amended complaint, employed by the Connecticut Department of Correction in various positions. Def. Statement, para. 2.

During the time periods referenced in the plaintiff's amended complaint, in 2002, Mr. Fernandez made many requests for free hygiene products and mail and his requests were addressed. Def. Statement, para. 3. Also during this time period, the Directives of the Department provided that inmates were required to pay for their own hygiene products and postage. Indigent inmates were eligible for a minimum of free mailings plus additional correspondence to courts as reasonably needed, and free toothbrushes, toothpaste or tooth powder, soap, shampoo, comb, disposable razor, and sanitary napkins/tampons as appropriate. An indigent inmate is one who has less than $5.00 in his or her inmate account at admission, or whose account has not exceeded $5.00 for the previous 90 days. Def. Statement, paras. 4, 5.

Plaintiff did not qualify as an indigent under Department of Correction Directives until on and after August 20, 2002, due to the fact that he had funds in his inmate account in excess of the level required for indigency status. Def. Statement, para. 6. Records of the Department of Correction show that plaintiff received free hygiene items and mail after August 20, 2002, and in some cases in advance of that date. Def. Statement, para. 7. In particular, documents in this case show that plaintiff received a free hygiene "care" package on August 22, 2002, containing the free products under Directive 6.10(24), and five free legal mail on August 22, 2002 and two free social mail on August 22, 2002, plus soap. Def. Statement, para. 8. In this same time period, the

Department of Correction provided for inmates' basic needs, regardless of an inmate's ability to pay, including food, clothing, shelter and medical care. Def. Statement, para. 9.

Records of the Department of Correction show that plaintiff filed grievances on these points and his grievances were ruled upon on their merits. Def. Statement, para. 10.

In Connecticut, there is an Inmate Legal Assistance Program ("LAP") which provides civil legal assistance to inmates in all DOC facilities. Def. Statement, para. 11.

## SUMMARY JUDGMENT STANDARDS

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." It has been held that summary judgment may be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and to which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 538 (1986); see also, Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 568-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). When a motion for summary judgment is adequately supported by documentary exhibits, depositions, answers to interrogatories or further affidavits, it must be controverted by a similar response setting forth specific facts showing that there is a genuine issue for trial, absent which summary judgment shall be entered, if appropriate. Foster v. Turner Broadcasting, 844 F.2d 955, 959 (2nd Cir. 1988), cert. denied, 488 U.S. 994 (1988). In other words, there must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A party opposing summary judgment may not rely on conjecture or conclusory assertions that the other

3

party is not telling the truth. See Gottlieb v. County of Orange, 84 F.3d. 511, 518 (2nd Cir. 1986). Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose. See e.g., Celotex, supra; H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879, F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. (1986), cert. denied, 480 U.S. 932 (1987). It is particularly appropriate in cases under 42 U.S.C. § 1983 involving insubstantial claims such as this case. Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).

## ARGUMENT

### 1. The Eleventh Amendment Bars This Action Against The Defendants In Their Official Capacities

It is now well established that a suit against a State official in his official capacity is, in actuality, a suit against the State. Brandon v. Holt, 469 U.S. 464, 471, 105 S. Ct. 873, 83 L.Ed.2d 878 (1985); Schiff v. Kerrigan, 625 F. Supp. 704, 707 n.7 (D. Conn. 1986). The real party in interest is the State. Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L.Ed.2d 114 (1985). It is equally well settled that the doctrine of sovereign immunity embodied by the Eleventh Amendment precludes a suit for damages against a state and its agencies. Edelman v. Jordan, 415 U.S. 651, 677, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment[1] is a constitutional limitation on the federal judicial power established in Article III, Section 2 of the United States Constitution in actions brought by a

---

[1] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state.

citizen against his own state. Pennhurst State School & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 98, 104 S. Ct. 900, 79 L.Ed.2 67 (1984); Ex Parte State of New York No. 1, 256 U.S. 490, 491, 41 S. Ct. 588, 65 L.Ed. 1057 (1921); Hans v. Louisiana, 134 U.S. 1, 15, 10 S. Ct. 504, 33 L.Ed. 842 (1890); Minotti v. Lensink, 798 F.2d 607, 609 (2nd Cir. 1986). Of course, a sovereign's Eleventh Amendment immunity may be waived by an unequivocally expressed consent to suit. Pennhurst, supra, at 99; see, e.g., Edelman v. Jordan, 415 U.S. 651, 673, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974); Clark v. Barnard, 108 U.S. 436, 477 2 S. Ct. 878, 27 L.Ed. 780 (1893). Consent means an explicit statutory provision granting permission to sue. Florida Dep't. of Health v. Florida Nursing Home Association, 450 U.S. 147, 150, 101 S. Ct. 1032, 67 L.Ed.2d 132 (1981); see also, Duguay v. Hopkins, 191 Conn. 222, 227, 464 A.2d 45 (1983); Comba v. Ridgefield, 177 Conn. 268, 273, 413 A.2d 859 (1979). In the instant case, plaintiff, in part, sues the defendants for money damages in their official capacities. The plaintiff did not, and cannot, allege consent to suit. Consequently, summary judgment should be rendered in defendants' favor on this point.

### 2. The State Is Not A "Person" Subject To Liability Under 42 U.S.C. § 1983

42 U.S.C. § 1983 provides that, "Every person, who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory, subjects ... any citizen ... to the deprivation of any rights ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis added). The United States Supreme Court

---

Despite its limited language, it is well settled that this provision precludes federal court jurisdiction over suits brought against the state by its own citizens, absent consent. Pennhurst State Schools & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 98, 104 S. Ct. 900, 79 L.Ed.2d 67 (1984); Edelman v. Jordan, 415 U.S. 651, 673-74, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974); see also, Red Star Towing & Transportation Co. v. State of Connecticut, 481 F. Supp. 1033, 1034 (D. Conn. 1976).

5

has refused, in view of the state's traditional sovereign immunity and the Eleventh Amendment, to construe the word "person" as including a State or its agencies. Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989); see also Krozser v. New Haven, 212 Conn. 415, 562 A.2d 1080 (1989), cert. denied, 493 U.S. 1036 (1990). Therefore, to the extent that this action is against the State through its officials, it is barred for this reason as well.

### 3. Plaintiff's Request For Injunctive Relief Is Moot

An actual case or controversy must exist at every stage of the proceedings. U.S. Const. Art. III; Preiser v. Newkirk, 422 U.S. 395, 401, 95 S. Ct. 2330, 45 L.Ed.2d 272 (1975). Where a court can no longer grant the requested relief, the court must dismiss the case as moot. "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2nd Cir. 1983). In the case of an inmate confined in a correctional institution, the Second Circuit has held that an inmate's request for declaratory or injunctive relief becomes moot when the inmate is transferred from that institution or released from the custody of the Department of Correction. See, e.g., Young v. Coughlin, 866 F.2d 567, 568 n.1 (2nd Cir. 1989), cert. denied, 492 U.S. 909 (1989); Mawhinney v. Henderson, 542 F.2d 1, 2 (2nd Cir. 1976); Phillips v. Ienuso, 1995 W.L. 237062 (S.D.N.Y. 1995).

The allegations in the complaint in this case concern incidents that allegedly occurred at the Cheshire Correctional Institution in 2002. The plaintiff is no longer housed at Cheshire Correctional Institution. Def. Statement, para. 1. Accordingly, the claims for declaratory and/or injunctive relief should be dismissed as moot pursuant to 28 U.S.C. § 1915(c)(2)(B)(ii) (directing the Court to dismiss at any time a claim upon which relief may not be granted).

### 4. The Amended Complaint Fails To State A Claim Upon Which Relief Can Be Granted

#### A. Free Hygiene Products

On this topic, plaintiff alleges that on August 7, 2002, he was denied "basic items of hygiene such as soap, toothbrushes and toothpaste, etc. which D.O.C. requires to provide in form of care package …" Am. Complaint, page 5. His pleadings and attachments further show that he received the care package on August 14, 2002. Am. Complaint, page 17 (D. Cause of Action (cont.) para. 6). He alleges that this constitutes a violation of his Eighth Amendment rights.

The Department of Correction provides by Directive that inmates must purchase their own hygiene items unless they are indigent. Such indigent inmates are eligible for a minimum of free toothbrushes, toothpaste or tooth powder, soap, shampoo, comb, disposable razor, and sanitary napkins/tampons as appropriate. An indigent inmate is one who has less than $5.00 in his or her inmate account at admission, or whose account has not exceeded $5.00 for the previous 90 days. Def. Statement, paras. 4, 5. Plaintiff had sufficient money in his account on and preceding August 7, 2202 to buy his own hygiene products, and in fact he did not become eligible for free hygiene products until August 20, 2002. Def. Statement, para. 6. Nevertheless, he received free hygiene products as he acknowledged on August 14, 2002. The record also shows multiple deliveries of free hygiene products to this plaintiff. Def. Statement, paras. 7, 8.

The Eighth Amendment to the United States Constitution prohibits correctional officials from acting with deliberate indifference to a prisoner's health or safety where his or her acts are "objectively [ ] sufficiently serious," and "result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). A person acts with deliberate indifference to an inmate's health or safety only if he or she knows that the inmate faces a substantial risk of serious harm and disregards that risk by

failing to take reasonable measures to abate it.  Campbell v. Meachum, 1996 U.S. App. LEXIS 29456 (2nd Cir. 1996).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, supra at 837.  Deprivation of toiletries for approximately two weeks "while perhaps uncomfortable—does not pose such an obvious risk to an inmate's health or safety to suggest that defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and [that they also drew] the inference."  Trammell v. Keane, 338 F.3d 155, 165 (2nd Cir. 2003) (Citations and quotations omitted).

In the instant case, plaintiff received his "care" package of free hygiene one week after he requested it, and about one week before he was, technically, eligible for it.  He received many deliveries of toiletries after that.  He has no grounds for complaint.

### B.  Free Mail

Plaintiff also alleges that the defendants obstructed his right of access to the courts by not providing him with free mail on August 19, 2002.  Am. Complaint, page 25 (D. Cause of Action, Claim II, para. 1).  We urge the Court to render summary judgment for the defendants on this point as well as he received free mail in compliance with DOC Directives which are constitutional.

The Department of Correction's rules provide as follows:

> D.  Cost of Correspondence.   Each inmate shall pay personal mailing expenses, except an indigent inmate.  An indigent inmate, as defined in Administrative Directive 6.10, Inmate Property, shall be permitted two (2) free social letters each week, and five (5) letters per month addressed to the court or attorneys, including any request for speedy trial under Sections 54-82c and 54-186 of the

> Connecticut General Statutes. Additional Free correspondence to courts and attorneys may be authorized by the Unit Administrator based upon the reasonable needs of the inmate.

DOC Directive 10.7(4) (D), Def. Statement para. 4, Exhibit C.

As the above rules state, some postage fees are waived for indigent inmates. An indigent inmate is one who has less than $5.00 in his or her account at admission, or whose account has not exceeded $5.00 for the previous 90 days. DOC Directive 6.10(3)(C), Def. Statement para. 5, Exhibit D. The plaintiff was not indigent under these rules until after August 20, 2002, and he received free postage as allowed under these directives after that date. Def. Statement, paras. 7, 8; Exhibit F. In particular, documents in this case show that he received five free legal mail on August 22, 2002 and two free social mail on August 29, 2002. Def. Statement, para. 8, Exhibit G. He received more after that. Def. Statement, Exhibit F.

The DOC Directives applicable in the instant case indicate that a pro se prisoner litigant must pay for postage unless he or she is indigent. Plaintiff was not indigent on August 19, 2002. The law is clear that the plaintiff has no freestanding protected right to free mail. In Lewis v. Casey, 518 U.S. 343 (1996) the U.S. Supreme Court required states to provide indigent inmates with the tools they need "in order to attach their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Smith v. Armstrong, 968 F. Supp. 40, 47 (D. Conn. 1996) quoting Lewis v. Casey, supra at 355. Connecticut has a Public Defender Service and Inmate Legal Assistance to Prisons Program which provide access to the courts for indigent inmates. See Conn. Gen. Stat. § 51-289 et seq. (Public Defenders); Def. Statement, para. 11 (Legal Assistance to Prisons). His "right to access to the courts may be balanced against the State's legitimate interests, including budgetary concerns." Gittens v. Sullivan, 670 F. Supp. 119, 122 (S.D.N.Y. 1987) aff'd per

9

curiam 848 F.2d 389 (2nd Cir. 1988). "There is simply no statutory or constitutional right to … free postage stamps … particularly where, as here, the prisoner cannot show he is indigent." Lyons v. Meese, 1988 U.S. Dist. LEXIS 16957 (E.D. Vir. 1988) citing Twyman v. Crisp, 584 F.2d 352, 359 (10th Cir. 1978).

With respect to postage for litigation, the DOC Directive which gives indigent inmates five free stamped envelopes monthly, and which can be supplemented "based upon the reasonable needs of the inmate" (DOC Directive 107.7(4)(D)), is not per se unconstitutional. In Gittens v. Sullivan, supra, our Court of Appeals upheld a New York Corrections Directive which allowed indigent inmates $1.10 per week for free stamps and an additional advance of at least $36 for postage for legal mail. The lower court there ruled:

> The prisoner's right to access to the courts may be balanced against the State's legitimate interests, including budgetary concerns.

Gittens v. Sullivan, 670 F. Supp. at 122.

The Court went on to find the provision to be adequate to provide an indigent inmate with sufficient postage to prosecute any normal amount of litigation, and pointed to the "avalanche" of papers submitted by the plaintiff as proof enough of meaning access. Id. at 123.

In the instant case, the State of Connecticut supplies a similar amount to indigent inmates. Accordingly, a predecessor Connecticut rule was upheld in the past. See, e.g., Vincenszo v. Inglis, No. 3-89-083 (WWE) (Recommended Ruling, July 12, 1991), Attachment A. The current rule should be upheld as well. The Constitution does not require that an indigent inmate be provided with unlimited free postage, only a "reasonable adequate amount of postage for access to the courts." Chandler v. Coughlin, 733 F. Supp. 641, 647 (S.D.N.Y. 1990); see also Zigmund v. Wynne, 1999 U.S. App. 20144 (2nd Cir. 1999).

That plaintiff may have to choose between spending his money on personal items or litigation sometimes is not a constitutional defect. In Connecticut, an inmate's basic needs are supplied by the State regardless of an inmate's ability to pay, including food, clothing, shelter and medical care. Legal assistance is available for free to indigent inmates form the Public Defender Services for criminal matters, Conn. Gen. Stat. § 51-289 et seq., and from the Inmate Legal Assistance Program for civil matters. Def. Statement, para. 11.

The DOC requirement that an inmate be indigent for a set period of time before being eligible for free mail is not unconstitutional. In <u>Nicholas v. Tucker</u>, 114 F.3d 17 (2nd Cir. 1997) <u>cert</u>. <u>denied</u> 523 U.S. 1124 (1998) the Court of Appeals tested the validity of the provision of the Prisoner Litigation Reform Act which required even indigent inmates to pay court filing fees in installments based on average monthly deposits in their inmate accounts, or average monthly balance, over a <u>six month period</u>. 28 U.S.C. § 1915(b)(1). In that case, the plaintiff complained that the law was unconstitutional because it prevented him from spending his limited funds in the manner he chooses. The Court found that rules requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the State. <u>Id</u>. at 21 <u>citing</u> <u>Boller v. Gunn</u>, 107 F.3d 227 (4th Cir. 1997). That precedent has proven dispositive in this District in similar claims in the past. <u>See</u>, <u>e.g.</u>, <u>Lebron v. Commissioner Armstrong</u>, 2003 U.S. Dist. LEXIS 17337 (D. Conn. 2003). We urge the Court to rule likewise here.

That plaintiff may experience delays in his litigation progress due to limited resources is also not a constitutional defect. Even before the U.S. Supreme Court ruled that actual injury was required to state a claim of lack of access to the courts, <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996), our courts considered such evidence in rejecting inmate challenges to limits on free

11

litigation supplies. As the Court ruled in Joseph v. Coughlin, 1994 U.S. Dist. LEXIS 17685 (N.D.N.Y. 1994), aff'd 60 F.3d. 811 (2nd Cir. 1995):

> A prisoner has a right to receive legal mail. **Heimerle v. Attorney General,** 753 F.2d 10, 12-13 (2d Cir. 1985); **Davidson v. Scully,** 694 F.2d 50, 53 (2d Cir. 1982). However, a prisoner must establish "actual injury" in order to prevail. **Sands v. Lewis,** 886 F.2d 1166, 1171 (9th Cir. 1989) (actual injury must be alleged where an inmate's claim does not involve the prison's law libraries or denial of legal assistance ); **see also Purcell v. Coughlin,** 790 F.2d 263, 265 (2d Cir. 1986) (access to courts claim dismissed for failure to allege any injury stemming from denial of pens); **Sowell v. Vose,** 941 F.2d 32, 34-35 (1st Cir. 1991) (complaint dismissed for lack of actual injury when inmate failed to show denial of access to all his legal documents); **Johnson v. Moore,** 948 F.2d 517, 521 (9th Cir. 1991) (summary judgment granted to defendant where inmate did not substantiate his claim that a dismissal for untimeliness was attributable to the denial of photocopies); **Henthorn v. Swinson,** 955 F.2d 351, 354 (5th Cir.), **cert. denied,** 119 L.Ed. 2d 593, 112 S. Ct. 2974 (1992) (access to courts claim denied for failure to show injury stemming from an action that had been dismissed and subsequently reopened); **Griffin v. Coughlin,** 743 F. Supp. 1006, 1022 (N.D.N.Y. 1990); **Martin v. Lane,** 766 F. Supp. 641, 646 (N.D. Ill. 1991) (prejudice not shown when alleged denial of access resulted in late submission of motions papers since inmate was not penalized for late filing). Without the plaintiff claiming that he suffered some injury from the alleged denial of his legal mail, the claim does not amount to a constitutional violation.
>
> In the case at bar, the plaintiff has failed to allege any adverse effect caused by the alleged denial of his legal mail. Indeed, such a claim by the plaintiff may prove difficult because the plaintiff eventually received the criminal court transcript he requested soon after he complained about not receiving it.

Joseph v. Coughlin, supra.

Post Lewis v. Casey, it is absolutely clear that "[a] delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." Standley v. Leyder, 2001 U.S. Dist. LEXIS 2274 (S.D.N.Y. 2001) quoting Jermosen v. Coughlin, 877 F. Supp. 864, 871 (S.D.N.Y. 1995). Plaintiff must show actual injury, such as the denial of a legal claim in a qualified case. Newman v. Holder, 101 F. Supp. 2d 103, 107 (E.D.N.Y. 2000); Lebron v. Commissioner Armstrong, supra. Thus, in this case, where plaintiff was required to wait until he was indigent before he received free mail, no constitutional

violation is evident because he has not shown prejudice to his litigation. Indeed it would be difficult for plaintiff to prove harm to his litigation in light of the volume of his output evident in this case, as well as in his other pending or recent litigation. See, Fernandez v. Armstrong, Civ. No. 3:03CV583 (JCH)(HBF); Fernandez v. Rinaldi, Civ. No. 3:03CV146 (WWE)(HBF); Fernandez v. Warden, No. CV-02-0469955-S; Fernandez v. Warden, No. CV-02-0470330-S; Page, Hiramrzdn and Fernandez v. Armstrong, No. CV-02-0470445-S; Fernandez v. Warden, No. CV-03-0003988-S; Fernandez v. Warden, No. CV-03-0004294-S; and Fernandez v. Warden, No. CV-03-0475502-S.

In the instant case, plaintiff complains about a rule without demonstrating actual injury to litigation in a qualified case. Accordingly, summary judgment should enter for the defendants.

### C. Grievance Rights

Plaintiff also complains that prison officials deliberately ignored his grievances. Am. Complaint, p. 19 (D. Cause of Action, Claim 1, para. 10). To whatever extent plaintiff has alleged interference with his grievance filings, and to whatever extent that the Court deems that such an allegation states a claim, the defendants do not claim he failed to exhaust his prison administrative remedies in this case. Accordingly, plaintiff has no "actual injury" and judgment should enter for defendants on this point as well. See Lopez v. Smiley, 2003 U.S. Dist. 16724 (D. Conn. 2003) citing Graham v. Henderson, 89 F.3d 75, 80 (2nd Cir. 1996) and Lewis v. Casey, supra. Moreover, he filed a multitude of grievances, which were ruled upon. See Def. Statement, para. 10.

### D. Failure to Promulgate Directives

Plaintiff accuses the defendant Hannah of failing to promulgate DOC Directives inserting mandatory language giving him unspecified rights creating liberty interests. Am. Complaint, p. 38. This allegation spells out no known cause of action as plaintiff has no right to require any

defendant to promulgate directives. Moreover, the insertion of mandatory language in directives does not create liberty interests. See Sandin v. Conner, 515 U.S. 472, 483, 115 S. Ct. 2295, 132 L.Ed.2d 418 (1995). Accordingly, we urge the Court to render judgment for defendants on this point as well.

### E. Other Claims

Plaintiff makes many other legal claims in his 57 pages of Amended Complaint, but they appear to be repetitive of the issues addressed above. If any other legal grounds for relief are spelled out, the defendants do not understand the nature of the complaints. Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.Civ. P. 8(a)(2). The rule also requires that "each averment of a pleading shall be simple, concise, and direct." F.R.Civ.P. 8(e)(1). Under the rules' liberal pleading standards, a plaintiff must disclose sufficient information to permit the defendant "to have a fail understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2nd Cir. 1991). "Dismissal … is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2nd Cir. 1988).

Complaints such as the instant one "which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim" do not fairly apprise either the Court or the defendants of the nature of the claim and therefore should be dismissed. Prezzi v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y. 1972); see Karlinsky v. New York Racing Association, 52 F.R.D. 40, 43 (S.D.N.Y. 1971); cf. Prezzi v. Schelter, 469 F.2d 691, 692 (2nd Cir. 1972), cert. denied, 411 U.S. 935 (1973) ("[S]ince [the complaint] contained a labyrinthian prolixity of unrelated and vituperative charges that defied

14

comprehension it failed to comply with the requirement of Rule 8 …"); Cunningham v. United States, Civ. No. N-87-567 (WWE) (Ruling on Motion to Dismiss, August 26, 1988) Attachment B.

### 5. The Plaintiff Has Failed To Demonstrate Personal Participation Or Responsibility

To prove a claim under 42 U.S.C. § 1983, the plaintiff must show that the defendants were personally involved in the alleged wrongdoing or contributed in some way to causing plaintiff's alleged injuries. See Poe v. Leonard, 282 F.3d 123, 140 (2nd Cir. 2002); Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994). In this case the plaintiff makes no allegation against the defendant Armstrong, and his claims against the defendants Hannah and Ahmed are vague, or concern alleged notifications after the fact, or concern matters which do not state a claim upon which relief can be granted. Accordingly, we urge the Court to render summary judgment in favor of these defendants, and any others not found to have participated in any alleged constitutional deprivation, for lack of personal participation or responsibility.

### 6. The Defendants Are Protected By Their Qualified Immunity

The defendants in this case, by virtue of their status as public officials who must be allowed to do their jobs in good faith without fear of being liable for damages each time they make a decision on behalf of the State, are clothed with qualified immunity in this case. Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).

The Supreme Court has held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, supra, at 818. In order for the immunity to be available, the public official or employee must have acted under an objectively reasonable belief that his actions were

lawful. Gomez v. Toledo, 446 U.S. 635, 100 S. Ct. 1920, 64 L.Ed.2d 572 (1980); Eng v. Coughlin, 858 F.2d 889, 895 (2nd Cir. 1988).

While the issues of qualified immunity and privilege ordinarily involve issues of fact which need to be affirmatively pleaded, the Supreme Court has sanctioned the final resolution of civil rights cases on qualified immunity grounds on motion for summary judgment in appropriate cases. See Harlow v. Fitzgerald, supra; see also, Cartier v. Lussier, 955 F.2d 841 (2nd Cir. 1992); Magnotti v. Kuntz, 918 F.2d 364 (2nd Cir. 1990). In the instant case, the Complaint shows no grounds upon which a constitutional claim can stand under the facts alleged. Schecter v. Comptroller, City of New York, 79 F.3d 265 (2nd Cir. 1996); Mozzochi v. Borden, 959 F.2d 1174, 1178 (2nd Cir. 1992). Even if the law was clearly established, under the circumstances alleged, the facts do not support the sufficiently culpable state of mind necessary to support liability. Thus, the facts alleged demonstrate that it was objectively reasonable for the officials to believe that their actions did not violate those rights. Bliveira v. Mayer, 23 F.3d 642, 648-49 (2nd Cir. 1994). The plaintiff's allegations should not suffice to subject these governmental officials to the costs of trial. Harlow, supra, at 817-18. It follows then, that the public officials in this case should be shielded from any personal liability. This case should, thus, be dismissed with prejudice.

Should any portion of the Complaint survive the Motion for Summary Judgment currently under consideration, then we respectfully reserve the right to prove the defense at trial.

### 7. The Court Should Decline To Accept Jurisdiction Over Any State Law Claims In This Case

The District Court may decline to exercise supplemental jurisdiction over state law claims in a case when it has dismissed all claims over which it has original jurisdiction, such as the § 1983 claims raised in this case. See 28 U.S.C. § 1367(c)(3). Where federal claims are

dismissed before trial, the state claims should be dismissed as well.  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Baylis v. Marriott Corp.</u>, 843 F.2d 658, 665 (2nd Cir. 1988).

The federal claims in this case should be resolved in favor of the defendants.  If that occurs, then we urge the Court to decline supplemental jurisdiction over the state law claims in this case, if any.

## **CONCLUSION**

For all of the foregoing reasons, we urge the Court to render summary judgment for the defendants, and dismiss the Amended Complaint accordingly.

                    DEFENDANTS
                    John Armstrong, et al.

                    RICHARD BLUMENTHAL
                    ATTORNEY GENERAL

BY:   /s/_____
        Robert F. Vacchelli
        Assistant Attorney General
        110 Sherman Street
        Hartford, CT  06105
        Federal Bar #ct05222
        E-Mail: robert.vacchelli@po.state.ct.us
        Tel.: (860) 808-5450
        Fax: (860) 808-5591

## **CERTIFICATION**

      I hereby certify that a copy of the foregoing was mailed to the following on this 27th day of April, 2004:

Luis Fernandez, Inmate No. 279900
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT  06080

        /s/_____
        Robert F. Vacchelli
        Assistant Attorney General