# EXHIBIT C

       correspondence addressed to or received from the Connecticut Correctional Ombudsman or attorneys. The word "attorneys" shall include organizations providing legal services to inmates.

    F.    <u>Publication</u>. A book (for example, novel, instructional manual), or a single issue of a magazine or newspaper, plus such other materials addressed to a specific inmate as advertising brochures, flyers and catalogues.

    G.    <u>Recording and Listening</u>. The recording and listening, including electronic recording of the number(s) called, on-line listening, recording of inmate telephone conversations and subsequent listening to recordings of inmate telephone conversations.

    H.    <u>Review</u>. A visual examination of an inmate's general correspondence, which may include, but shall not be limited to, reading the correspondence.

    I.    <u>Unit</u>. An organizational component of the Department, subordinate to a division or subdivision, administered by a Unit Administrator. A unit may be a correctional facility, a community service unit, or other special service unit.

4.    <u>Inmate Correspondence</u>. Inmates may write and receive letters subject to the following provisions:

    A.    <u>Frequency</u>. There shall be no limit placed on the number of letters an inmate may write or receive at personal expense, except as a disciplinary penalty in accordance with Administrative Directive 9.5, Code of Penal Discipline.

    B.    <u>Timely Handling</u>. Incoming and outgoing correspondence shall be processed without unnecessary delay.

    C.    <u>Correspondents</u>. An inmate may write to anyone except:
(1) a victim of any criminal offense for which the inmate has served or is serving a sentence, or stands convicted of, or disposition is pending; (2) any person under the age of 18 when the person's parent or guardian objects in writing to such correspondence;
(3) an inmate in another correctional facility, other than immediate family; (4) a parolee or inmate on community confinement without the express permission of the Unit Administrator and the addressee's supervisor;
(5) any person whom the inmate is restrained from writing to by court order; or (6) any other person, when prohibiting such correspondence is generally necessary to further the substantial interests of security, order or rehabilitation.

    D.    <u>Cost of Correspondence</u>. Each inmate shall pay personal mailing expenses, except an indigent inmate. An indigent inmate, as defined in Administrative Directive 6.10, Inmate Property, shall be permitted two (2) free social letters each week, and five (5) letters per month addressed to the court or attorneys, including any request for speedy trial under Sections 54-82c and 54-186 of the Connecticut General Statutes. Additional free correspondence to courts and attorneys may be authorized by the Unit Administrator based upon the reasonable needs of the inmate.

    E.    <u>Outgoing General Correspondence</u>.

        1.    <u>Review, Inspection and Rejection</u>. All outgoing general

correspondence shall be subject to being read at the direction of the Unit Administrator, by person(s) designated in writing by such Administrator, for either a specific inmate(s) or on a random basis if the Commissioner or Unit Administrator has reason to believe that such reading is generally necessary to further the substantial interests of security, order or rehabilitation. Outgoing general correspondence may be restricted, confiscated, returned to the inmate, retained for further investigation, referred for disciplinary proceedings or forwarded to law enforcement officials, if such review discloses correspondence or materials which contain or concern: (a) the transport of contraband in or out of the facility; (b) plans to escape; (c) plans for activities in violation of facility or departmental rules; (d) plans for criminal activity; (e) violations of or unit rules; (f) information which if communicated would create a clear and present danger of violence and physical harm to a human being; (g) letters or materials written in code; (h) mail which attempts to forward unauthorized correspondence for another inmate; or (i) threats to the safety or security of staff, other inmates or the public.

The initial decision to take any action provided for in Section 4(E)(1) except to read, which shall be at the discretion of the Unit Administrator, shall be made by the designee of the Unit Administrator. Such designee shall not be the same person who made the initial mailroom review.

2. **Notice of Rejection**. In the event that the designee of the Unit Administrator determines that outgoing general correspondence shall not be sent as provided for above in Section 4(E)(1) the inmate sender shall be notified in writing of the correspondence rejection and the reason therefor. The inmate may seek review in writing within five (5) days thereafter from the Unit Administrator. The Unit Administrator shall notify the inmate of the final decision and the reason therefor in writing. In the event such rejection results in referral for prosecution or investigation for violation of unit or department rules or of the criminal law, the notice of rejection may be delayed until the appropriate investigation is completed.

3. **Limitations on Restrictions**. Any restrictions imposed on outgoing general correspondence shall be unrelated to the suppression of expression and may not be restricted solely based on unwelcome or unflattering opinions or factually inaccurate statements.

4. **Procedure for Mailing**. Outgoing general correspondence shall be inserted into the envelope and sealed by the inmate but shall be subject to inspection, review and rejection subject to the provisions of Section 4(E)(1) above. All outgoing general correspondence shall include: (a) a complete legible name and address of the party the correspondence is being sent to; (b) the inmate's complete legible name, inmate number, and present unit address; and (c) the name under which the inmate was committed to the

facility or another name approved for official recognition. Correspondence which fails to include this information shall be returned, if reasonably practicable, to the inmate.

F. <u>Incoming General Correspondence</u>.

1. <u>Review, Inspection and Rejection</u>. All incoming general correspondence shall be opened and inspected for contraband and money and shall be subject to being read at the direction of the Unit Administrator, by person(s) designated by such administrator, for either a specific inmate(s) or on a random basis when the Commissioner or Unit Administrator has reason to believe that such reading is reasonably related to legitimate penological interests. All incoming general correspondence may be rejected if such review discloses correspondence or material(s) which would reasonably jeopardize legitimate penological interests, including, but not limited to, material(s) which contain or concern: (a) the transport of contraband in or out of the facility; (b) plans to escape; (c) plans for activities in violation of facility or department rules; (d) plans for criminal activity; (e) violations of this Directive or unit rules; (f) material which reasonably could cause physical or emotional injury to the inmate recipient as determined by the appropriate mental health staff; (g) letters or materials written in code; (h) threats to the safety or security of staff, other inmates, or the public, facility order or discipline, or rehabilitation; (i) sexually explicit material(s) which meet the standards and review procedures set forth in Section 4(M)(1) below; or (j) any other general correspondence, rejection of which is reasonably related to a legitimate penological interest. Incoming general correspondence containing any of the foregoing may be restricted, confiscated, returned to the sender, retained for further investigation, referred for disciplinary proceedings or forwarded to law enforcement officials. The decision to take any action provided for in this Section shall be made by the designee of the Unit Administrator. Such designee shall not be the same person(s) who made the initial mailroom review.

2. <u>Notice of Rejection</u>. In the event the designee of the Unit Administrator determines that incoming general correspondence shall not be delivered as provided for above in Section 4(F)(1), the sender and the inmate shall be notified in writing of the correspondence rejection and the reason therefor. The person(s) so notified may seek review in writing within 10 days thereafter from the Unit Administrator. The Unit Administrator shall notify the person(s) seeking review of the Unit Administrator's final decision and the reason therefor in writing. In the event such rejection results in referral for prosecution or investigation for violation of unit or department rules or of the criminal law, the notice of rejection may be delayed until the appropriate investigation is completed. If the ultimate decision is to reject delivery and if there is no further need to retain the rejected correspondence, then it shall be returned to the sender if reasonably practicable.

G.  **Monetary Remittances**.

1.  <u>Incoming</u>. An inmate may only receive certified, payroll, cashier or government checks and money orders from sources approved by the Unit Administrator. The amount and source shall be recorded. Cash shall not be accepted through the mail for credit to an inmate's account. A receipt shall be issued to the inmate for any acceptable funds approved.
2.  <u>Outgoing</u>. An inmate must obtain prior approval in order to send funds out of the facility in accordance with Administrative Directive 3.6, Inmate Accounts.

H.  <u>Identification of Privileged Correspondence</u>. Only correspondence clearly identified as privileged correspondence shall be treated as privileged correspondence. Correspondence not so identified shall be treated as general correspondence. Such identification shall specify a correspondent as enumerated in Section 3(E).

I.  <u>Outgoing Privileged Correspondence</u>. Outgoing privileged correspondence shall be inserted into an envelope clearly identifying a privileged correspondence addressee as enumerated in Section 3(E) and sealed by the inmate. Outgoing privileged correspondence shall not be opened, nor read. Each facility shall provide a special mailbox for unfranked privileged correspondence directed toward Department officials in accordance with Section 4(H) above. All correspondence shall be forwarded without unnecessary delay.

J.  <u>Incoming Privileged Correspondence</u>. All incoming privileged correspondence shall be opened and inspected, but not read, only in the presence of the inmate addressee.

1.  <u>Inspection and Rejection</u>. If upon opening and inspecting such privileged correspondence it contains nonwritten enclosure(s), then such enclosure(s) may be examined to determine whether the delivery of such enclosure(s) would reasonably jeopardize a legitimate penological interest. If the Unit Administrator determines that delivery of the enclosure(s) would reasonably jeopardize a legitimate penological interest, then the Unit Administrator may refuse to deliver such correspondence and its enclosure(s). The sender and the inmate shall be notified in writing of the privileged correspondence rejection and the reason therefore. In no such case shall the Unit Administrator read the privileged correspondence or written enclosure(s).
    If the enclosure(s) is not appropriate for criminal prosecution, further investigation for violation of unit or department rules, or of the criminal law, the unread correspondence and the enclosure(s) shall be returned to the sender with a statement of the reason therefor. If the Unit Administrator reasonably believes that the enclosure(s) should be referred for criminal prosecution or investigation for violations of unit or department rules, or of the criminal law, the unread correspondence shall be sealed and

forwarded in a confidential manner with the enclosure(s) to the appropriate law enforcement or other agency for investigation, together with a written statement as to the reason therefor.

2. **Notice of Rejection.** In the event that the Unit Administrator determines that incoming privileged correspondence or enclosure(s) shall not be delivered the inmate and the sender shall be notified in writing of the rejection and the reason therefor. The person(s) so notified may seek review in writing within 10 days thereafter from the appropriate Deputy Commissioner or designee. The Deputy Commissioner or designee shall notify in writing the person(s) of the final decision and the reasons therefor. In the event such rejection results in referral for prosecution or investigation for violation(s) of unit or department rules, or of the criminal law, the notice of rejection may be delayed until the appropriate investigation is completed.
3. **Accidental Opening.** If privileged correspondence is opened accidentally, outside the presence of the inmate, the envelope shall be immediately stapled and the required inspection for unauthorized enclosure(s) accomplished in the presence of the inmate.

K. **Forwarding of Mail.** An inmate shall be responsible for informing a correspondent of a change of address. When an inmate is transferred to another facility privileged correspondence shall be forwarded to the inmate's new facility. The Department shall not be responsible for the forwarding of general correspondence. If an inmate has escaped or is released, the correspondence shall be marked "Escaped" or "Released" and returned to the sender.

L. **Certified Mail.** Requests for a speedy trial under Sections 54-82c and 54-186 of the Connecticut General Statutes and correspondence with the Sentence Review Board shall be the only correspondence routinely sent certified. Any other request for mailing by Certified Mail, for good cause, shall be authorized at the discretion of the Unit Administrator.

M. **Incoming Publications and Materials .** Requests for any local orders for books, magazines, newspapers, educational materials or periodicals shall be made through the school principal or other person as designated by the Unit Administrator who shall determine that the inmate is able to pay for such material(s). If approved, a check or money order for payment shall be withdrawn from the inmate's account and included with the order. An inmate may order hardcover books in new condition only from a publisher, book club, or book store. Incoming materials which adversely affect a valid penological interest may be rejected in accordance with the following review procedures:

1. **Procedures for Review of Publications and Sexually Explicit Materials.** The Unit Administrator may reject a publication only if it is determined to be detrimental to the security, good order, or discipline of the facility or if it might facilitate criminal activity. The Unit Administrator may not reject a publication solely because its content is

religious, philosophical, political, social or sexual, or because its content is unpopular or repugnant. Publications which may be rejected by a Unit Administrator include but are not limited to publications which meet one of the following criteria: (a) it depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices; (b) it depicts, encourages, or describes methods of escape from correctional facilities, or contains blueprints, drawings or similar descriptions of the Department of Correction's facilities; (c) it depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs; (d) it is written in code; (e) it depicts, describes or encourages activities which may lead to the use of physical violence or group disruption; (f) It encourages or instructs in the commission of criminal activity; or (g) it is sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the facility, or facilitates criminal activity.

A Unit Administrator shall determine that sexually explicit material of the following types is to be excluded: (1) sado-masochistic; (2) bestiality; (3) involving children; or (e) materials depicting sexual activity which involves use of force or without the consent of one or more parties.

2. <u>Individual Review of Publications or Materials</u>. The Unit Administrator may not establish an excluded list of publications. The Unit Administrator shall review the individual publication prior to the rejection of that publication. Rejection of several issues of a subscription publication is not sufficient reason to reject the subscription publication in its entirety.

3. <u>Notice of Rejection</u>. Where a publication is found unacceptable, the Unit Administrator shall promptly advise the inmate in writing of the decision and the reasons for it. The notice must contain reference to the specific article(s) or material(s) considered objectionable and deemed to pose a threat or detriment to the security, good order or discipline of the facility or to encourage or instruct in criminal activity. The inmate shall be allowed to appeal to the Commissioner or designee within 15 days of receipt of the rejection letter.

4. <u>Notification to Publisher or Sender</u>. The Unit Administrator shall provide the publisher or sender of an unacceptable publication a copy of the rejection letter. The Unit Administrator shall advise the publisher or sender that an independent review of the rejected material may be obtained by writing to the Commissioner or designee within 15 days of receipt of the rejection letter. The Unit Administrator shall return the rejected publication to the publisher or sender of the material unless the inmate indicates an intent to file an appeal under the inmate grievance procedure, in which case the Unit Administrator shall retain the rejected material at the facility for review. In case of appeal, if the rejection is sustained, the rejected publication shall

        be returned when appeal or legal use is completed.

5. **Quantity Limitations.** The Unit Administrator may set limits locally (for fire, sanitation, housekeeping, security or disciplinary reasons) on the number or volume of publications an inmate may receive or retain in the inmate's quarters in accordance with Administrative Directives 6.10, Inmate Property and 9.4, Restrictive Status and Level 5 Units. The Unit Administrator may authorize an inmate additional storage space for storage of necessary legal materials in accordance with Administrative Directive 6.10.

N. **Stationery Supplies.** Each correctional facility commissary shall sell: (1) stationery, envelopes, postcards, greeting cards and postage and (2) aerogramme folding letters (for foreign air mail letters).

5. **Telephone Access.** Each Facility Administrator shall provide "collect call only" telephones which allow for outgoing calls in areas specified by the Unit Administrator for inmate use. Schedules and terms for telephone use shall be posted in telephone areas. Inmate use of "collect call only" telephones shall be deemed a privilege and not an entitlement. Use of any telephone may be prohibited by the Facility Administrator in accordance with Administrative Directives 6.14, Security Risk Groups and 9.5, Code of Penal Discipline or to meet any valid penological interest. If the call is to an attorney, such prohibition shall be based upon a determination relating to the maintenance of security, safety or orderly operation of the facility. The availability or use of any telephones may be restricted or terminated at the discretion of the Commissioner or designee. Inmates shall not have access to use any facility telephone, other than a "collect call only" telephone, except as authorized in this Directive.

Credit card calls, billing to a third party, call forwarding, transfers or any other method which circumvents collect call billing shall be prohibited.

A. **General Provisions for "Collect Call Only" Telephones.** "Collect call only" telephones shall operate on a Personal Identification Number (PIN) system. Each inmate shall be required to enter their authorized Personal Identification Number to place a call. An inmate requesting to use a "collect call only" telephone shall submit a list of no more than ten (10) phone numbers. The facility shall review the submitted phone numbers and deleted any restricted phone number(s) from the list, e.g., known phone number of victim of the inmate's crime. The list of authorized numbers shall be entered into the phone system and shall constitute the inmate's allowed call list. Each inmate shall be allowed to change the list of phone numbers once every 30 days.

The Commissioner shall issue a list establishing the authorized number of phone calls allowed. Each phone call from a collect call only telephone shall be limited to 15 minutes. The calls may only be made between the hours of 6:00 a.m. and 11:00 p.m. There shall be no time limit between allowable calls. Any unauthorized or fraudulent use of the phone system shall subject an inmate to loss of phone privileges in accordance with Administrative

Directive 9.5, Code of Penal Discipline.

B. <u>Restrictive Status Inmate</u>. An inmate in punitive segregation status, administrative detention status or transfer detention status in accordance with Administrative Directive 9.4, Restrictive Status and Level 5 Units shall not be allowed to use a "collect call only" telephone except for cause as approved by the Unit Administrator. An inmate in administrative segregation status in accordance with Administrative Directive 9.4, Restrictive Status and Level 5 Units shall be allowed one (1) phone call up to 15 minutes per week, plus telephone calls to attorneys, as approved by a supervisor. An inmate on protective custody status in accordance with Administrative Directive 9.4, Restrictive Status and Level 5 Units shall be allowed telephone calls on a comparable basis to inmates in general population, but limited to those periods when protective custody inmates are allowed out of their cells.

C. <u>Emergency Calls</u>. Any inmate upon approval by the Shift Commander/Unit Manager, may be allowed to place an emergency call. Such calls shall be at state expense if the inmate is indigent in accordance with Administrative Directive 6.10, Inmate Property, and shall be listened to and documented in the facility log book in accordance with Administrative Directive 6.2, Facility Post Orders and Logs.

D. <u>Recording and Listening to "Collect Call Only" Telephone Calls</u>. Only telephone calls from "collect call only" telephones may be recorded and listened to provided the following provisions are complied with:

   1. <u>Notification</u>. A sign in English and Spanish shall be posted at each inmate telephone location which reads: "Any conversation utilizing these telephones shall be subject to recording and listening."

      Upon admission, each inmate shall be given a form stating that the inmate's telephone calls are subject to recording and listening. The inmate shall acknowledge reading the form by a legible printed name and signature or by an appropriate assent acknowledged in writing by a staff member. Any inmate not so consenting shall not be allowed use of the "collect call only" telephones and shall be instructed that any such use shall be unauthorized and in violation of institutional rules.

   2. <u>Automatic Tone Warning</u>. Inmate telephone calls shall be recorded in accordance with the provisions of Section 52-570d of the Connecticut General Statutes and any other applicable law. No call shall be recorded unless the recording is accompanied by an automatic tone warning device which automatically produces a distinct signal that is repeated at intervals of approximately 15 seconds during the communication while such instrument, device or equipment is in use.

   3. <u>Listening</u>. Listening shall be authorized only by the Unit Administrator or higher authority when there is reason to believe that such listening is reasonably related to the

        maintenance of the security, good order or discipline of the facility or the prevention of criminal activity either within the facility or without.

D.   <u>Access to and Retention of Recordings of Telephone Calls</u>. Only personnel authorized in writing by the Unit Administrator or higher authority shall listen to inmate telephone calls or recordings of inmate telephone calls. Such person authorized in writing to listen should be a person whose duties relate to the purposes as stated in Section 5(C)(3) and who has been instructed and trained in these governing standards so as to eliminate the listening to conversations not directly related to these standards. Access to tapes shall be limited to persons designated in writing by the Commissioner or the Unit Administrator or their designees. Tapes shall be maintained for a minimum of 90 days at which time they can be reused, except that any tape containing information leading to administrative, investigative or legal action shall be maintained for three years or for the duration of the proceedings whichever is longer.

E.   <u>Privileged Telephone Calls</u>. An inmate shall be provided a reasonable accommodation to make prearranged non-recorded telephone calls to any person enumerated in Section 3(E) on non-collect call only telephones without the recording and/or listening provided for in Section 5(C) above, and provided the person enumerated in Section (E) called agrees to accept the charges. Privileged calls to state and federal public defenders offices and Legal Assistance to Prisoners shall be toll free. This shall not extend to private attorneys handling particular cases as special public defenders or on a "pro bono" basis. Inmates shall be allowed two privileged calls a month in addition to calls initiated by the inmate's attorney. Calls answered by a busy signal shall not be counted. Calls answered by a person or machine, capable of taking a message, shall be counted as a contact. An inmate's request for a call to an attorney shall be honored either by the close of the first business day following the day on which the request was received or at the time specified by the inmate, whichever shall occur later. Requests by attorneys, to include paralegal and law students working under an attorney's supervision, for privileged calls to inmates shall be honored by the close of the first business day following the day on which the request was received from the attorney or at the time specified by the attorney, whichever shall occur later. Requests by attorneys shall be honored without limitations as to number or frequency. Privileged calls shall be placed by staff who shall verify the party's identity prior to placing the inmate on line. The staff member shall then move out of listening range of the inmate's conversation. The employee placing the call may maintain visual observation of the inmate. Privileged calls shall be limited to 30 minutes. In the absence of exigent circumstances, this limitation shall be increased at the oral or written request of the attorney.

      A log shall be kept for privileged telephonic communications in accordance with Administrative Directive 6.2, Facility Post Orders and Logs, denoting the following:

      1.    Inmate name and number,
      2.    Date and name or person making request,
      3.    Date and time of call,
      4.    Authorizing authority,
      5.    Staff placing call,
      6.    Number called,
      7.    Person contacted,
      8.    Duration of call,
      9.    Inmate signature, (at completion of call), and
      10.   Date and time call completed.

When an inmate's call is terminated due to exigent circumstances, an incident report shall be completed in accordance with Administrative Directive 6.6, Reporting of Incidents. A copy of the report shall be forwarded to the District Administrator for review.

F. **Listening to Non-Recorded Telephone Calls**.
Non-privileged telephone calls conducted on non-recorded telephone lines may be listened to (e.g., on an extension line) provided the following provisions are complied with:

1. The telephone call is placed by a Department of Correction staff member whose duties include placing of telephone calls for inmates.
2. The inmate for whom the call is made and the person to whom the call is made are informed by such staff member that the call will be listened to and they both agree to this arrangement.
3. Such call and listening is reasonably related to a legitimate penological interest.
4. The inmate signs a statement agreeing to have the conversation listened to.

G. **Termination**. Any call may be terminated for the following reasons: (1) violation of unit rules; (2) illegal activity; (3) exceeding applicable time limits; (4) vandalism or misuse of equipment; (5) threatening or disruptive behavior; (6) in the event of a unit emergency; or (7) for a legitimate penological interest.

H. **Community Residential Telephones**. Each community residential facility shall provide a written directive for telephone use. Such telephones shall not be recorded and/or listened to.

6. **Notification**. Upon admission, each inmate shall be given a form which states, "I have been advised that the Commissioner of Correction has adopted regulations pertaining to mail and telephone use and that these regulations are contained in Sections 18-81-28 through 18-81-51 of the Regulations of Connecticut State Agencies". The inmate shall acknowledge reading the form by signature.

7. **Disclosure of Correspondence and/or Telephone Conversations**.
Information obtained from correspondence and/or telephone calls by correctional staff, pursuant to the provisions of this Directive, shall be disclosed only as reasonably necessary to promote legitimate penological, law enforcement or public safety purposes.

8.  **Exceptions**. Any exception to the procedures in this Administrative Directive shall require the prior written approval of the Commissioner.

# EXHIBIT D

A.D. 6.10, Inmate Property
Prepared for signature 3/3/03 - effective 3/5/03

1.  <u>Policy</u>.  An inmate may possess only that property authorized for retention upon admission to the facility, issued while in custody, purchased in the facility commissary, or approved at the facility in accordance with this Administrative Directive.  An inmate's property shall be managed in a manner which contributes to a safe, sanitary and secure environment for staff and inmates.

2.  <u>Authority and Reference</u>.

    A.  Connecticut General Statutes, Chapter 53 and Section 18-81.
    B.  Regulations of Connecticut State Agencies, Sections 4-157-1 through 4-157-17.
    C.  American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4157, 3-4279 through 3-4281 and 3-4393.
    D.  American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-2E-11 and 3-ALDF-4A-04.
    E.  Administrative Directives 3.8, Commissary; 6.9, Control of Contraband and Criminal Physical Evidence; 6.14, Security Risk Groups; 9.3, Inmate Admissions, Transfers and Discharges; 9.4, Restrictive Status; 9.5, Code of Penal Discipline; 9.6, Inmate Grievances; 10.7, Inmate Communications; and 10.8, Religious Services.

3.  <u>Definitions</u>.  For the purposes stated herein, the following definitions apply:

    A.  <u>Bulk Storage</u>.  Civilian clothing and effects not authorized for retention by a pretrial inmate.
    B.  <u>Contraband</u>.  Anything not authorized to be in an inmate's possession; used in an unauthorized or prohibited manner; or altered in any way.
    C.  <u>Indigent Inmate</u>.  An inmate who has less than five dollars ($5.00) on account at admission or whose account has not exceeded five dollars ($5.00) for the previous 90 days.
    D.  <u>Inmate Property</u>.  Inmate property is property that is (1) issued by the facility; (2) authorized by this directive; (3) purchased through the commissary; or (4) authorized by a physician for health care reasons.
    E.  <u>Legal Materials</u>.  All documents including an inmate's notes and petitions related to any pending administrative action relative to the inmate's incarceration or any documents related to pending legal action involving the inmate.
    F.  <u>Property Officer</u>.  An employee designated by the Unit Administrator to oversee the handling of inmate property in accordance with this Directive.
    G.  <u>Religious Article</u>.  Inmate property, other than authorized headwear, prayer rugs and published material, having spiritual significance, which is used in individual or congregate religious activity.

    H.    <u>Storage Property</u>. Property owned by an inmate that the facility will maintain in secure storage. There are two (2) types of storage property: valuable and bulk.

    I.    <u>Temporary Storage Property</u>. Property which an inmate is not permitted to possess because of assignment to a temporary restrictive status.

    J.    <u>Unauthorized Property</u>. Property which is either not allowed by the terms of this Directive or is in excess quantity of property permitted by this Directive.

    K.    <u>Unclaimed Property</u>. Inmate property that: (1) is not claimed at discharge or within 30 days after discharge; (2) is not claimed by the inmate's next of kin within 30 days of notification of an inmate's death; (3) belongs to an inmate who has escaped; or (4) is contraband property that has not been disposed of pursuant to this Directive.

    L.    <u>Valuable Storage</u>. Jewelry, wallets, purses and keys which an inmate may not retain in the inmate's personal possession.

4. <u>Inmate Property Matrix</u>. The type and quantity of inmate property shall be governed by the security level of the facility or unit, inmate status and the designation of the facility (e.g., pretrial or sentenced). A Unit Administrator shall adhere to and limit personal property in accordance with the Attachment A, Inmate Property Matrix. The Inmate Property Matrix shall be posted conspicuously and be accessible to inmates. Each item authorized by the Inmate Property Matrix as "commissary purchase only" shall be available at each Department commissary, except as noted in the Inmate Property Matrix.

5. <u>Admissions</u>. Upon arrival at any facility, each inmate shall be allowed to retain personal property in accordance with the Inmate Property Matrix. Each item specified shall be itemized during admission and recorded on the CN 61001, Inmate Property Inventory.

    A.    <u>Inventory Details</u>. Any retained item, which requires inventory by the Inmate Property Matrix, shall be listed using accurate descriptive information including size, color, make or brand, and serial or identification number.

    B.    <u>Unauthorized Property</u>. Any item not to be retained by an inmate shall be inventoried using the Inmate Property Inventory, CN 61001. Any such item shall be appropriately disposed of in accordance with Section 27 of this Directive and the CN 61002, Inmate Property Status and Receipt shall be completed. No inmate shall be permitted to retain any item which does not conform to the Inmate Property Matrix or is in excess of the quantities allowed in Section 16.

    C.    <u>Inmate Signature</u>. Each inmate shall be required to review and sign CN 61001, CN 61002, CN 61003, Inmate Money Receipt Form and CN 61004, Inmate Property Valuables and Document Storage and Discharge Receipt as appropriate. A staff member shall witness the signature.

    D.    <u>Inventory and Receipt Filing</u>. A Central Property File for each inmate with a complete record of all property transactions shall be maintained by the property officer. Each Inmate Property Inventory Form and any other information regarding an inmate's