B. A drop safe shall be managed by Fiscal Services. All items placed into the drop safe shall be recorded in a logbook. The envelopes shall be removed each business day for deposit in the appropriate accounts. Fiscal Services staff shall compare items and money amounts on the receipt against envelope contents, the Attachment C, Receipt Journal and the logbook, before depositing the monies in the account. If there is any discrepancy between the receipt and envelope contents, the Shift Commander shall be notified immediately and an Incident Report completed.

C. Any drops to safe shall be signed by two (2) staff members and entered into the log shall be reviewed by a Shift Commander at the start of each shift.

D. Any discrepancies between the log and the audited amounts shall by reported immediately to the Unit Administrator who shall in turn notify the Director of Fiscal Services and the Office of the Comptroller, as appropriate. Before notification by the Unit Administrator to the above administrators, a preliminary investigation should be conducted to determine if reporting or other minor errors are involved. However, no such preliminary investigation should delay a report by the Unit Administrator more than one (1) business day.

12. Documents and Valuables. Upon admission personal documents and valuables shall be inventoried on the CN 61003, Inmate Property Valuables and Document Storage and Discharge Receipt. Documents and valuables shall be sealed in an envelope not used for any other purpose, marked with the inmate's name and identification number and deposited in a locked container. A copy of CN 61003 shall be kept with the envelope, a copy retained in the inmate's property file and a copy given to the inmate. If the envelope containing documents and valuables cannot be deposited in the place normally used for such materials, then the procedures of Section 11(B), (C) and (D) shall be followed in tracking such materials until they are placed in a designated secure area.

13. Clothing. Clothing, other than footwear, which features a logo, trademark, picture or lettering shall not be allowed. Any clothing article with a hood or that may be utilized as a hood shall not be allowed. Personal sneakers shall be black, white or gray or any combination of the three colors and shall not exceed an estimated retail price of one hundred ($100.00) dollars. In addition, Unit Administrators may restrict on an individual basis any specific article of clothing otherwise allowed, and dispose of it as provided in Section 27, if the article of clothing is likely to result in its use for bartering or other illicit purposes. The Unit Administrator may require clothing which is considered valuable (e.g., over $100.00) to be disposed of as provided in Section 27 and not retained or stored at the facility.

14. Jewelry. Jewelry may be permitted in accordance with the Inmate Property Matrix. The facility shall dispose of all other jewelry in accordance with Section 27. An item may be disallowed if the size and/or design is deemed to be a threat to security. No single item of allowable jewelry may have a claimed value greater than fifty dollars ($50.00), except a wedding ring, which shall have a value of not more than two hundred

property record shall be maintained in the Inmate Property File.

6.  Markings. As specified in Attachment A, Section 3(D) of the Matrix Code, inmate property shall be permanently marked with the inmate's name and number. Markings shall be made unobtrusively with indelible ink, or an engraver as appropriate.

7.  Inmate Responsibility. An inmate's property is retained at the inmate's own risk. The Department shall not be responsible for any property, personally retained by the inmate which is lost, stolen, damaged, consumed or discarded while in the inmate's possession (e.g., living quarters or on person). An inmate shall not loan, trade, sell, give or transfer property to another inmate.

8.  Additions and Deletions. A running inventory of each item, as noted in Attachment A, Inmate Property Matrix, Section 3(B) of the Matrix Code, shall be maintained by the facility's designated property officer. A CN 61001, Inmate Property Inventory, shall be updated when an inmate receives, purchases, or sends home any authorized personal property. Any change including additions or deletions which involve a running inventory item required in accordance with the Attachment A, shall be appropriately recorded on the CN 61001. Any deletion shall be crossed off the running inventory and recorded in the Addition/Deletion Section. The CN 61002, Inmate Property Status and Receipt shall be completed and a copy given to the inmate and a copy retained in the inmate file.

9.  Contraband. Any property found in the inmate's possession which is improperly marked, has been altered or has altered markings or cannot be verified as belonging to the inmate shall be considered contraband and disposed of in accordance with Section 28.

10. Bulk Storage.

    A.  Unless approved by the Unit Administrator on a temporary case by case basis, storage of property meeting the definition of "Bulk" shall not be allowed. Pretrial inmates who are sentenced and granted temporary storage shall have to meet the requirements of this Directive and to dispose of bulk storage excess property in accordance with Section 27.

    B.  Each bulk storage item shall be tagged with the inmate's name and number and recorded on the CN 61001, Inmate Property Inventory as a storage item. The CN 61002, Inmate Property Status and Receipt shall also be completed by listing the items being stored. The original CN 61002 shall be retained in the inmate's property file and a copy shall be stored with the property and another copy given to the inmate.

11. Monies. Inmate monies shall be received by the facility in accordance with procedures issued by the Director of Fiscal Services. At a minimum, the following shall be observed:

    A.  All monies shall be recorded on the Attachment B, Inmate Money Receipt Form. Monies shall be placed in a sealed envelope. A copy of Attachment B shall be kept with the envelope, a copy given to the inmate and a copy retained in a secure area.

dollars ($200.00). The inmate, upon admission to a facility, must sign the CN 61001, Inmate Property Inventory stating that the value of the items in the inmate's possession does not exceed the authorized value.

15. Religious Articles. Religious articles may be allowed in accordance with the Inmate Property Matrix. Religious articles shall be available for Commissary purchase in accordance with Administrative Directive 3.8, Commissary. Inmates requesting to purchase religious articles not available through the Commissary may be allowed to purchase these items via mail order with the written permission of the Deputy Commissioner of Programs and Staff Development, in accordance with Administrative Directive 10.8, Religious Services. Religious articles shall be of minimal monetary value and shall not constitute a safety or security threat. An inmate shall be permitted to retain a religious article so long as it has a value of no more than fifty dollars ($50.00) and the size and design is not deemed a threat to security and order. Rejection of a specific religious article may be appealed by a newly admitted inmate using the Inmate Grievance Procedure, in accordance with Administrative Directive 9.6, Inmate Grievances. Religious articles shall not be displayed and shall be worn or carried under the clothing.

16. Limitations on Property. The total amount of property permitted in Sections 17 through 21 and the items so indicated on the Inmate Property Matrix shall not exceed six (6) cubic feet at Level 2 through Level 4 general population facilities and five (5) cubic feet in Level 5 facilities and Level 4 Close Custody programs. Property items must be stored in the locker or designated area as indicated on Attachment A, Inmate Property Matrix and shall not exceed the allowed cubic foot requirements even if the excess is an allowable item within allowable quantities. Items authorized under Sections 20 and 21 shall not comprise more than two (2) cubic feet. Any amount in excess of such materials shall be disposed of in accordance with Section 27. Unit Administrators shall establish procedures to monitor and audit inmate's compliance with this Directive and these property limitations.

17. Legal Materials. Each inmate shall be allowed to maintain legal materials in the inmate's living area. The Unit Administrator may allow additional short-term storage outside the cell/living area and the inmate shall be allowed controlled access. An inmate shall be required to demonstrate that any legal material permitted in short-term storage is related to pending litigation. All legal materials retained in a housing unit shall be considered inmate property and shall be subject to inspection and review.

18. Paper Materials. Paper materials, including but not limited to, religious publications, books, periodicals, and correspondence shall be permitted in accordance with this Directive and Administrative Directives 6.14, Security Risk Groups; 9.5, Code of Penal Discipline; and 10.7, Inmate Communications. Paper materials may be limited in accordance with this Directive based upon potential fire, sanitation, security and housekeeping hazards presented by an excess of such materials. Paper materials shall be stored in the inmate's locker or a designated area when not in use.

19. Hobby Craft Materials. Each Unit Administrator shall develop unit

directives to address storage for arts and crafts projects if such programs are permitted at the facility. If the Unit Administrator permits storage of hobby craft items in the cell/living area, the items shall be stored in a secure manner and shall not present a fire, sanitation, security or housekeeping hazard. If the inmate transfers to a facility, which does not authorize hobby craft materials, the inmate shall dispose appropriately of the materials in accordance with Section 27. If, upon transfer, the total volume of the inmate's hobby craft materials exceeds one cubic foot, the material shall not be transferred and shall be disposed of at the inmate's expense in accordance with Section 27.

20. Commissary. Commissary items, other than appliances and clothing, shall not accumulate in the cell/living area in excess of the limitation in Section 16. Unit Administrators may restrict the quantity of any single commissary item that may be kept in the cell/living area or purchased at one time.

21. Food. Unless authorized by the Unit Administrator on a temporary basis, such as a holiday, food shall not be stored in housing units. Items purchased from the commissary shall be exempted from this provision, but shall be subject to the volume limitation imposed in Sections 16 and 20 above.

22. Pictures and Wall Decorations. In dormitory housing units, not more than five (5) pictures or decorative items may be displayed on the wall or other area open to public view in an inmate's immediate living area. In celled or cubicle units, not more than six (6) square feet of designated wall space per inmate, shall be permitted to display pictures or wall decorations. Nothing attached to a wall shall mar or deface the wall. Neither nudity nor sexually explicit pictures shall be displayed anywhere in the facility (e.g., walls, in lockers). In all restrictive housing units, inmates shall not be permitted to display pictures or wall decorations.

23. Confiscation of Property Items. Possession of excessive quantities as defined by this Directive, unauthorized use of an allowable item, or creating a nuisance such as playing a radio, cassette player or television too loudly or during time such items may not be used, shall be cause for confiscation. Confiscation shall require that a Disciplinary Report be issued in accordance with Administrative Directive 9.5, Code of Penal Discipline. A receipt shall be given for any item confiscated. A copy of the Disciplinary Report may serve as the inmate's receipt. The item may be confiscated pending disposition of the Disciplinary Report. If an inmate is found guilty such items may be disposed of as specified in Section 28.

24. State Issued Items. Each inmate shall be provided state issued clothing, footwear, and linen in accordance with the Attachment A, Inmate Property Matrix.

A. In addition, an indigent inmate as defined in Section 3, shall, when needed, be provided only the following items:

1. toothbrush;

2. toothpaste or toothpowder;
3. soap;
4. shampoo;
5. comb;
6. disposable razor,
7. sanitary napkins/tampons as appropriate; and
8. five (5) stamped envelopes monthly.

B. State issued items shall not be removed as punishment. However, any item may be removed or restricted for legitimate health, safety or security reasons.

C. All uniforms provided for work assignments by a facility shall be used only for the purposes intended and shall not be counted as part of the totals in the Attachment A, Inmate Property Matrix. However, work uniforms shall be limited to the amount necessary for the work assignment.

Whether property is inmate owned or state issued, the total amount in the inmate's possession shall not exceed the maximum amount allowed in accordance with Section 16 and Attachment A.

25. Inter-Facility Transfers. When an inmate is transferred from one facility to another, the following procedures shall be observed:

A. Inventory and Packing. Each inmate shall be provided with a maximum of five (5) container(s) to pack the inmate's own property. Inmates shall bring it to a designated area for inventory by an assigned employee. Exceptions to this procedure may be authorized by the Shift Commander when:

1. the inmate's behavior or physical condition prevents the inmate from packing;
2. the inmate has been transferred from court without returning to the facility; or
3. an inmate is moved to a restrictive housing or Level 4 Close Custody unit where authorized property is limited.

When these exceptions occur, an employee shall be assigned to pack all items to be stored and/or transferred. The employee shall complete and sign the CN 61001, Inmate Property Inventory for the items. Property shall be packed and stored when it becomes known that the inmate shall not return to the housing unit. Perishable items shall be discarded if the original packaging is opened.

All inmate property, whether from storage or from the housing unit, shall be secured in boxes and inventoried. No inmate shall pack or store another inmate's property. The completed inventory shall be compared to the inmate's existing CN 61001, Inmate Property Inventory. Any item not recorded on the existing inventory form shall be disposed of in accordance with Section 27 or 28. In such cases the CN 61002, Inmate Property Status and Receipt shall be completed for any unauthorized property. A copy of both inventory forms along with a copy of as appropriate, shall be placed in one (1) of the inmate's property boxes that is being

transferred. The original inventory sheets shall be maintained in the Central Property File. Each inmate property box shall be sealed with tape and marked with the inmate's last name, number, and total number of boxes being transferred. Property too bulky to be boxed (e.g., television) shall be tagged with a 3" x 5" Property Identification Card and prepared form which shall have the inmate's name and number attached with a string or taped to the property as applicable.

B. Security Prior to Transport. Property shall remain in a designated storage area until transporting staff are ready to leave. Valuable property shall remain in a designated secure area and be checked and recorded by designated staff before it is turned over to transporting staff.

C. Transport Staff Responsibility. For each inmate being transferred, the sending facility shall complete and the transporting staff shall sign the CN 61004, Inmate Property Transfer Receipt acknowledging receipt of the number of container(s) and bulk items, when accepting custody of the property. Security of property shall be the responsibility of the transporting staff until such items are accepted at the receiving facility. During transport, inmate property shall not be accessible to inmates.

D. Receiving Facility. Assigned staff at the receiving facility shall sign the CN 61004, Inmate Property Transfer Receipt, accepting such property as indicated on the form. The designated employee shall check all property items against the CN 61001, Inmate Property Inventory Form and the Attachment A, Inmate Property Matrix completing a new CN 61001 in accordance with Section 5. If an item is not authorized at the receiving facility in accordance with the Attachment A, the inmate shall dispose of the item as provided in Section 27. Any discrepancy, from the CN 61002, Inmate Property Status and Receipt or from the CN 61001, shall be noted by completing an incident report and reported to the Shift Commander. The Shift Commander or designee shall notify the sending facility and shall forward a copy of the incident report and property forms to the sending facility Unit Administrator to initiate an investigation. Completed Inmate Property Transfer Receipts shall be placed in the Central Property File.

E. Transfer to Halfway House. When an inmate is transferred to a halfway house the inmate's property shall be inventoried by a staff person at the halfway house upon the inmate's arrival. Halfway houses shall develop a system for inventorying inmate property which shall be approved by the Community Enforcement Administrator. Any discrepancy in the inventory conducted at the sending facility and the halfway house inventory shall be handled through the appropriate Community Enforcement Supervisor and the sending facility Unit Administrator. Funds in an inmate's account shall be made available in accordance with Administrative Directive 9.3, Inmate Admissions, Transfers and Discharges. If an inmate escapes from a halfway house, the inmate's funds shall be forfeited and immediately transferred to the Correctional General Welfare Fund.

F. Time Frames. An inmate's property, to include the inmate's files (except funds in the inmate's personal account), shall be

transferred with the inmate. In cases of an emergency or if transported by judicial marshals or outside law enforcement agencies, an inmate may be transferred without personal property. In such cases the property shall be forwarded as soon as possible but not later than four (4) days after transfer and all property forms shall be completed as required.

26. Discharges.

A. Prior to an inmate's release from custody, all stored property and valuables shall be brought to a designated location and a verification of the most recent inventory of the inmate's property shall be conducted. A new inventory shall normally be completed in the presence of the inmate. The inmate shall sign the new CN 61001, Inmate Property Inventory Form to verify receipt of the property. The inmate normally shall take all property at the time of departure.

B. All authorized personal property shall be returned to the inmate. All state issue items and any other property belonging to the Department shall be returned to the facility.

C. All valuables and documents shall be claimed by the inmate who shall check the items and sign the CN 61003, Inmate Property Valuables/Document Storage Receipt for such items prior to discharge.

D. The balance of the inmate's monies shall be given to the inmate or made available by next business day. If the funds are not picked up the next business day, the check is mailed to an address provided by the inmate. Inmate pay, or other funds, once reconciled, shall be made available or forwarded to the address provided by the inmate.

E. Any property discrepancies shall result in an incident report being completed and an investigation shall be initiated by the Unit Administrator.

27. Disposal of Unauthorized Property. Unauthorized property shall be subject to the following:

A. The inmate shall be given a receipt for the items if the property is confiscated.

B. If the inmate is the rightful owner the inmate shall be given written notice via the CN 61002, Inmate Property Status and Receipt to:

1. identify an approved visitor to whom the items may be released within 30 days;
2. provide an address to which the items may be mailed at the inmate's expense unless the inmate is indigent, (in such case, the facility shall pay the postage);
3. identify an approved charity to which the items may be donated; or
4. authorize the facility to discard the item. In no case shall the property be used by or given to a state employee.

C. Failure to elect one of the options in Section B above, shall

represent a forfeiture of any claim to the property after 30 days from notification. The property shall be considered unclaimed and shall be disposed of in accordance with Section 29.

28. Disposal of Contraband Property.

A. A disciplinary report shall serve as a receipt for confiscated contraband as appropriate.
B. Any property for which the inmate is not the rightful owner shall be returned to the rightful owner (only if the property was stolen from the rightful owner).
C. Illicit drugs and weapons shall be disposed of in accordance with Administrative Directive 6.9, Control of Contraband and Physical Evidence.
D. All other contraband property shall be disposed of in accordance with Section 29.
E. Unauthorized monies shall be confiscated and deposited in the inmate welfare fund.

29. Unclaimed Property. Unclaimed property that the Unit Administrator deems of reasonable market value shall be inventoried and transferred to the possession of the Department of Administrative Services in accordance with guidelines issued by the Deputy Commissioner of Operations. Unclaimed inmate property that the Unit Administrator deems of no reasonable market value shall be discarded. Any funds in the inmate's account not claimed within one (1) year shall be transferred to the Inmate Welfare Fund. Any funds of inmates on escape status shall be forfeited and transferred to the Correctional General Welfare Fund immediately following the inmate being placed on such status.

30. Staff Prohibition. No Department employee shall use any inmate property or enjoy any benefit for any such property in any way. An inmate may not sell, give, loan or otherwise transfer any property to a staff member. Use of such property shall result in progressive disciplinary action including dismissal.

31. Inmate Review. When possible, an inmate should be present during any property inventory. Inmates shall sign all forms indicating receipt of property and/or the results of any inventory. If an inmate cannot sign or refuses to sign, the staff member conducting the inventory or preparation shall sign acknowledging the action taken.

32. Clothing Packages. An inmate may be allowed to receive clothing from any person on the inmate's visiting list in accordance with the following:

A. Each inmate may receive one (1) package a year during the holiday package season as enumerated in Section 33, below. The package shall be mailed to the facility with the sender's return address.
B. The Unit Administrator or designee shall determine if the package contains clothing that complies with this Directive, e.g., quantity, quality, specific type and color, etc.
C. The inmate shall appropriately dispose of extra items, in

accordance with the Property Matrix, that may have occurred with the receipt of the package.

D. The Unit Administrator of a facility housing pre-trial inmates may authorize direct drop-off and exchange of approved court clothing articles by an inmate's immediate family. Clothing considered to be valuable (e.g. over $100.00) may not be retained or stored at the facility. Pre-trial inmates who are sentenced shall have to meet the requirements of this directive and to dispose of the court clothing in accordance with Section 27.

33. Holiday Packages. An inmate, not on any restricted status in accordance with Administrative Directive 9.4, Restrictive Status, may be allowed to receive holiday packages from a vendor contracted by the Department. By November 1 of each year, the Deputy Commissioner of Operations shall issue guidelines governing the purchasing and processing of holiday packages. Each Unit Administrator of a facility authorized to participate shall establish procedures in accordance with the Deputy Commissioner of Operations annual memorandum regarding holiday packages.

34. Inmate Dress Code. Inmate dress shall conform with the following standards:

A. Body shall remain clean and free of odor;
B. Hair shall be clean and appropriately groomed;
C. Pants shall be fully buttoned/zipped and connected with a proper fit at the waist and not allowed to hang off the hips;
D. Pants legs shall not be tucked into socks or shoes;
E. Shoes/sneakers shall be worn in a clean fashion and laces shall not drag on the floor;
F. All clothing shall be commercially purchased, unaltered and of a cloth fabric;
G. Clothing shall not be tight, short or revealing;
H. Shirts/blouses shall be properly buttoned, not expose the midriff, and tucked in at the waist, except that sweatshirt and shirts with short squared off tails designed for exterior wear may be worn outside the waist;
I. Hats shall be worn in an appropriate manner with the brim in the front. Kuffis and hajibs may be worn for religious purposes. All headwear shall be removed upon demand for inspection. Doo rags shall not be worn outside the housing unit, and a head covering which could serve as a hood shall be prohibited; and
J. Inmates shall be: in the appropriate facility attire when leaving the housing unit; appropriately dressed, at a minimum in recreation wear, while in the housing area; and appropriately covered when going to or coming from a shower.

35. Claims Notification. An inmate seeking to file a claim for lost or damaged property shall use the Inmate Grievance procedure prescribed in Administrative Directive 9.6, Inmate Grievances. The inmate shall describe the circumstances surrounding the loss or damage as completely as possible on the grievance form. The Unit Administrator shall ensure that an initial report is prepared. Nothing in the grievance process shall limit an inmate's right to pursue a claim with the State Claims Commissioner if the grievance process is exhausted without resolution. Any claim regarding commissary items may be settled as provided by the

unit directive.

36. Claims Filing. If, after exhausting the inmate grievance system without resolution, an inmate contends that the Department of Correction is responsible for the loss of or damage to any inmate property, then the inmate is entitled to file a claim with the State Claims Commissioner. Any claim must be filed within one (1) year of the knowledge of the loss or damage but in no event more than three (3) years since the loss or damage. The following procedures shall be used in filing a claim:

A. The inmate shall be provided two (2) copies of the CN 61005, Property Claims Form. Any inmate unable to complete the form shall be provided with appropriate assistance.
B. The inmate shall be advised that the burden of proving the property's value shall be the inmate's responsibility.
C. The inmate shall mail one (1) copy of the CN 61005 to the State Claims Commissioner along with the appropriate filing fee to the address indicated on the form. The second copy of CN 61005 shall be marked copy and shall be forwarded to the Unit Administrator and placed in the inmate's Master File.

37. Claims Investigation. The Unit Administrator at the facility where the alleged property loss or damage occurred shall ensure that the claim is investigated by the designated Grievance Coordinator. The Unit Administrator shall ensure that a complete record is made, to include the following:

A. A written report on the claim, to include copies of the Inmate Grievance;
B. CN 61006, Agency Position Form;
C. CN 61007, Affidavit of Authenticity of Documents Form.

When a claim is resolved at the unit level it will be necessary to notify the Office of Claims Commission utilizing the CN 61008, Affidavit of Claimants Intent to Withdraw Claim Form. One (1) copy shall be placed in the inmate's master file, and a copy shall be forwarded to the Unit Administrator with the original sent to the Claims Commission.

38. Property Form Maintenance. All original property forms, as required by this Directive, shall be maintained in each inmate's Central Property File by the facility's designated Property Officer. All inmate Central Property Forms shall be sealed and transported with the inmate's property. Central Property Files for inmates who are discharged, placed on community release status or transferred to a another jurisdiction shall be retained and stored by the last facility housing the inmate.

39. Exceptions. Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

# EXHIBIT E

T R U S T A C C O U N T S T A T E M E N T

DOC: 0000279900 Name: FERNANDEZ, LUIS
LOCATION: 125-A DOB: 07/22/1976

ACCOUNT BALANCES Total : 98.66 CURRENT: 98.66 HOLD: 0.00 Max Date:

| SUB ACCOUNT | START BALANCE 01/01/2002 | END BALANCE 12/30/2002 |
|---|---|---|
| HOLIDAY PACKAGES | 0.00 | 0.00 |
| PLRA | 0.00 | 83.50 |
| SPENDABLE BALANCE | 2.82 | 0.16 |

DEBTS AND OBLIGATIONS

| TYPE | PAYABLE | INFO NUMBER | AMOUNT OWING | AMOUNT PAID |
|---|---|---|---|---|

TRANSACTION DESCRIPTIONS -- HOLIDAY PACKAGES SUB-ACCOUNT

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
|---|---|---|---|---|

TRANSACTION DESCRIPTIONS -- PLRA SUB-ACCOUNT

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
|---|---|---|---|---|
| 01/04/2002 | DED | Deduction-PLRA-11132001 | 81.00 | 81.00 |
| 04/26/2002 | DED | Deduction-PLRA-11132001 | 2.50 | 83.50 |

TRANSACTION DESCRIPTIONS -- SPENDABLE BALANCE SUB-ACCOUNT

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
|---|---|---|---|---|
| 01/04/2002 | DMR | Mail Receipts 125 083551 | 405.00 | 407.82 |
| 01/04/2002 | DED | Deduction-PLRA-11132001 | ( 81.00) | 326.82 |
| 01/08/2002 | CRS | CRS SAL ORD #816971 D2 | ( 35.16) | 291.66 |
| 01/22/2002 | CRS | CRS SAL ORD #840410 D2 | ( 4.07) | 287.59 |
| 01/22/2002 | CRS | CRS SAL ORD #840683 D2 | ( 3.50) | 284.09 |
| 01/29/2002 | CRS | CRS SAL ORD #854393 D2 | ( 13.52) | 270.57 |
| 02/08/2002 | CRS | CRS SAL ORD #878670 D2 | ( 14.56) | 256.01 |
| 02/15/2002 | CRS | CRS SAL ORD #890907 D2 | ( 16.73) | 239.28 |
| 02/22/2002 | WSR | Special Request - 125 | ( 14.99) | 224.29 |
| 02/26/2002 | CRS | CRS SAL ORD #905231 D2 | ( 8.98) | 215.31 |
| 03/05/2002 | CRS | CRS SAL ORD #918600 D2 | ( 14.22) | 201.09 |
| 03/11/2002 | CRS | CRS SAL ORD #930578 D2 | ( 6.73) | 194.36 |
| 03/12/2002 | CEC | CEC SAL ORD #918600 D2 | 0.73 | 195.09 |
| 03/12/2002 | CEC | CEC SAL ORD #918600 D2 | 0.52 | 195.61 |
| 03/15/2002 | CRS | CRS SAL ORD #939771 D2 | ( 38.99) | 156.62 |
| 03/18/2002 | CRS | CRS SAL ORD #943072 D2 | ( 29.23) | 127.39 |
| 03/19/2002 | WSR | Special Request - 125 | ( 36.75) | 90.64 |

DEPARTMENT OF CORRECTIONS
CONNECTICUT DEPARTMENT OF CORRECTION
Page 1 Of 2

T R U S T ACCOUNT STATEMENT

OTRTASTA 4.10.0.0.9 TR

DOC: 0000279900 Name: FERNANDEZ, LUIS
LOCATION: 125-A

DOB: 07/22/1976

ACCOUNT BALANCES Total : 98.66 CURRENT: 98.66 Max Date: HOLD: 0.00

| SUB ACCOUNT | START BALANCE 01/01/2002 | END BALANCE 12/30/2002 |
|---|---|---|
| HOLIDAY PACKAGES | 0.00 | 0.00 |
| PLRA | 0.00 | 83.50 |
| SPENDABLE BALANCE | 2.82 | 0.16 |

DEBTS AND OBLIGATIONS

| TYPE | PAYABLE | INFO NUMBER | AMOUNT OWING | AMOUNT PAID |
|---|---|---|---|---|

TRANSACTION DESCRIPTIONS -- HOLIDAY PACKAGES SUB-ACCOUNT

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
|---|---|---|---|---|

TRANSACTION DESCRIPTIONS -- PLRA SUB-ACCOUNT

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
|---|---|---|---|---|
| 01/04/2002 | DED | Deduction-PLRA-11132001 | 81.00 | 81.00 |
| 04/26/2002 | DED | Deduction-PLRA-11132001 | 2.50 | 83.50 |

TRANSACTION DESCRIPTIONS -- SPENDABLE BALANCE SUB-ACCOUNT

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
|---|---|---|---|---|
| 01/04/2002 | DMR | Mail Receipts 125 083551 | 405.00 | 407.82 |
| 01/04/2002 | DED | Deduction-PLRA-11132001 | ( 81.00) | 326.82 |
| 01/08/2002 | CRS | CRS SAL ORD #816971 D2 | ( 35.16) | 291.66 |
| 01/22/2002 | CRS | CRS SAL ORD #840410 D2 | ( 4.07) | 287.59 |
| 01/22/2002 | CRS | CRS SAL ORD #840683 D2 | ( 3.50) | 284.09 |
| 01/29/2002 | CRS | CRS SAL ORD #854393 D2 | ( 13.52) | 270.57 |
| 02/08/2002 | CRS | CRS SAL ORD #878670 D2 | ( 14.56) | 256.01 |
| 02/15/2002 | CRS | CRS SAL ORD #890907 D2 | ( 16.73) | 239.28 |
| 02/22/2002 | WSR | Special Request - 125 | ( 14.99) | 224.29 |
| 02/26/2002 | CRS | CRS SAL ORD #905231 D2 | ( 8.98) | 215.31 |
| 03/05/2002 | CRS | CRS SAL ORD #918600 D2 | ( 14.22) | 201.09 |
| 03/11/2002 | CRS | CRS SAL ORD #930578 D2 | ( 6.73) | 194.36 |
| 03/12/2002 | CEC | CEC SAL ORD #918600 D2 | 0.73 | 195.09 |
| 03/12/2002 | CEC | CEC SAL ORD #918600 D2 | 0.52 | 195.61 |
| 03/15/2002 | CRS | CRS SAL ORD #939771 D2 | ( 38.99) | 156.62 |
| 03/18/2002 | CRS | CRS SAL ORD #943072 D2 | ( 29.23) | 127.39 |
| 03/19/2002 | WSR | Special Request - 125 | ( 36.75) | 90.64 |

# EXHIBIT F

# FREE POSTAGE ENVELOPE LOG SOUTH BLOCK 6

2002

| NAME | NUMBER | CELL | SOC | LEG | DATE | |
|------|--------|------|-----|-----|------|---|
| ▓▓▓▓▓ | ▓▓▓▓ | 65-1 | 2-10C | | 7/19 | |
| ▓▓▓▓▓ | ▓▓▓▓ | 688 | 2-11 | | 8/19 | |
| ▓▓▓▓▓ | ▓▓▓▓ | 619 | 23HC | | 7/19 | |
| ▓▓▓▓▓ ▓▓▓▓ | ▓▓▓▓▓ | 641 | 210C | | 8/19 | |
| ▓▓▓▓▓ | ▓▓▓▓ | 683 | 5-11C | | 8/12 | |
| ▓▓▓▓▓ | ▓▓▓▓ | 634 | 210C | | 9/13 | |
| ▓▓▓▓▓ | ▓▓▓▓ | 65-1 | 23HC | | 4 | 1.50AP |
| ▓▓▓▓▓ | ▓▓▓▓ | 4 | 21HC | | 4 | 1.50AP |
| ▓▓▓▓▓ ▓▓▓▓ | ▓▓▓▓▓ | 644 | 2HC | | 8/19 | 1.50AP |
| ▓▓▓▓▓ | ▓▓▓▓ | 683 | 2HC | | 8/15 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 642 | 310C | | 9/3 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 4 | 21HC | | 4 | 4 |
| ▓▓▓▓▓ | ▓▓▓▓ | 629 | 2HC | | 4 | 4 |
| ▓▓▓▓▓ | ▓▓▓▓ | 624 | 210C | | 4 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 649 | 2HC | | 9/3 | SAP |
| ▓▓▓▓▓ ▓▓▓▓ | ▓▓▓▓▓ | 619 | 2HC | | 4 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 60 | 23HC | | 8/5 | 4 |
| ▓▓▓▓▓ | 4 | 4 | 23HC | | 8/19 | |
| ▓▓▓▓▓ | ▓▓▓▓ | 684 | 23HC | | 9/13 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 609 | 230C | | 9/6 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 638 | 21HC | | 9/10 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 634 | 2HC | | 9/10 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 634 | 2HC | | 9/11 | SAP |
| | | | | | | |
| ▓▓▓▓▓ | ▓▓▓▓ | 648 | DHC | | 8/6 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 68 | 2HC 2HC | | 9/16 | |
| ▓▓▓▓▓ | ▓▓▓▓ | 644 | 350C | | 9/10 | SAP |
| ▓▓▓▓▓ ▓▓▓▓ | ▓▓▓▓▓ | 618 | 2HC | | 9/4 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 683 | 2HC | | 9/4 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 648 | 2HC | | 9/4 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 644 | SHC | | 9/6 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 683 | 210C | | 10/1 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 644 | 230C | | 4 | |
| ▓▓▓▓▓ | ▓▓▓▓ | 68 | 2HC | | 10/4 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 670 | 2HC | | 10/6 | |
| ▓▓▓▓▓ | ▓▓▓▓ | 684 | 2HC | | 10/7 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 683 | 250C | | 10/13 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 644 | 250C | | 10/13 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 607 | 210C | | 10/13 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 670 | 2HC | | 10/15 | SAP |
| ▓▓▓▓▓ | ▓▓▓▓ | 600 | 210C | | 4 | |

# FREE POSTAGE ENVELOPE LOG SOUTH BLOCK 6

2002 - 03

| NAME | NUMBER | CELL | SOC/LEG | DATE | |
|---|---|---|---|---|---|
| ████ | ████ | 619 | 2-1st | 10/16 | Sup |
| ████ | | 63 | 2ndc | 10/16 | Sup |
| █████ ＊ | 23924 | 603 | 2xc | 10/16 | Sup |
| ████ | | 63 | 2-1stC | 10/16 | Sup |
| ████ | | 648 | 2-1stC | 10/16 | Sup |
| ████ | | 603 | 3-1stC | 10/03 | Sup |
| ████ | | 618 | 5-1stC | 10/03 | Sup |
| ████ | | 619 | 2-1stC | 10/8 | Sup |
| ████ | | 648 | 5-1stC | 10/03 | Sup |
| ████ | | 617 | 2-1stC | 10/08 | Sup |
| ████ | | 607 | 2ndC | 10/9 | Sup |
| ████ | | 623 | 2ndC | 10/03 | Sup |
| ████ | | 603 | 2-1stC | 10/06 | Sup |
| ████ | | 620 | 2xC | 10/01 | Sup |
| ████ | | 618 | 2-1stC | 10/31 | Sup |
| ████ | | 620 | 2xC | 11/2/03 | Sup |
| ████ | | 63 | 2ndC | 11/03 | Sup |
| ████ | | 607 | 2ndC | | |
| 618 | | 618 | 2-1stC FM | 11/9/10 | Sup |
| ████ | | 60? | 2xC | 11/10/03 | Sup |
| ████ | | 603 | 2xC | 11/10/03 | Sup |
| ████ | | 608 | 2-1stC | 11/15/03 | Sup |
| ████ | | 610? | 2-1stC | 11/15/03 | Sup |
| ████ | | 627 | 2-1stC | 11/13/03 | Sup |
| ████ | | 64 | | 11/13/03 | Sup |
| ████ | | 63 | 2xC | 11/13/03 | Sup |
| ████ | | 603 | | 11/15/03 | Sup |
| ████ | | 628 | | 11/15/03 | Sup |
| ████ | | 63 | 2xC | 11/13/03 | |
| ████ | | 617 | 2xC | 11/22/03 | Sup |
| ████ | | 618 | 2xC | 11/22/03 | Sup |
| ████ | | 63 | 2-1stC | 11/24/03 | |
| ████ | | 63 | 2-1stC | 11/26/03 | Sup |
| ████ | | 620 | 2-1stC | 11/26/03 | Sup |
| ████ | | 648 | 2xC FM | 12/29/03 | |
| ████ | | 620 | 2-1stC FM | 2/3/03 | Sup |
| ████ | | 627 | 2-1stC | 2/1/03 | Sup |
| ████ | | 618 | 2-1stC FM | 2/3/03 | Sup |
| ████ | | 648 | 2xC | 2/7/03 | Sup |
| ████ | | 649 | 2ndC | 2/10/03 | Sup |
| 63 63 | | 620 | 2xC | 2/11/03 | Sup |
| ████ | | 618 | 2C | 2/11/03 | Sup |
| ████ | | 627 | 2-1stC | 2/11/03 | Sup |
| ████ | | 648 | 2-1stC | 2/17/03 | Sup |
| ████ | | 63 | 2xC | 2/18/03 | Sup |
| ████ | | 639 | 2xC | 2/18/03 | Sup |
| ████ | | 627 | 2xC | 2/24/03 | Sup |
| ████ | | 620 | 2-1stC | " | Sup |
| ████ | | 649 | 2xC | 2/27/03 | Sup |

# FREE POSTAGE ENVELOPE LOG SOUTH BLOCK 6

| NAME | NUMBER | CELL | SOC/LEG | | SOAP | Recr. Unit | DATE |
|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | 607 | 2 | | 1 | | 7/21/03 |
| | | 618 | 2 | | | | " |
| | | 625 | 2 | | 1 | | 7/22/03 |
| | | 605 | | | 1 | | 7/24/03 |
| | | 614 | 2 | | 1 | | " |
| | | 614 | 2 | | 1 | | 7/28/03 |
| | | 606 | 2 | | 1 | | " |
| | | 618 | 2 | | 1 | | 7/[illegible] |
| | | 620 | 2 | | 1 | | 8/4/03 |
| | | 618 | 2 | | 1 | | 8/5/03 |
| | | 635 | 2 | | 1 | | " |
| | | 646 | | | 1 | | " |
| | | 626 | 2 | | 1 | | 8/7/03 |
| | | 630 | 2 | | 1 | | 8/11/03 |
| | | 622 | 2 | | 1 | | 8/11/03 |
| | | 626 | 2 | | 1 | | 8/12/03 |
| | | 619 | 2 | | 1 | | 8/12/03 |
| | | 632 | 2 | | 1 | 1 | 8/[illegible]/03 |
| | | 620 | 2 | | 1 | | 8/[illegible]/03 |
| | | 630 | 2 | | 1 | 1 | 8/[illegible]/03 |
| | | 622 | 2 | | 1 | | 8/[illegible]/03 |
| | | 632 | 2 | | 1 | | 8/19/03 |
| | | 632 | 2 | | 1 | | " |
| | | 619 | 2 | | | | 8/26/03 |
| | | 630 | 2 | | 1 | | 8/[illegible]/03 |
| [illegible] | [illegible] * | 631 | 2 | | 1 | | 8/28/03 |
| [redacted] | [redacted] | | | | | | 9/[illegible]/03 |
| | | 619 | 2 | | 1 | | 9/10/03 |
| | | 632 | 2 | 5 | 1 | | 9/[illegible]/03 |
| | | 634 | 2 | | 1 | 1 | 9/[illegible]/03 |
| | | 620 | 2 | 5 | 1 | | " |
| [illegible] | [illegible] * | 631 | | 5 | | | 9/[illegible]/03 |
| [redacted] | [redacted] | 630 | 2 | | 1 | | 9/[illegible]/03 |
| | | 638 | 2 | | 1 | 1 | 9/[illegible]/03 |
| | | 614 | 2 | | 1 | | " |
| | | 601 | 2 | | 1 | | " |
| | | 620 | 2 | | 1 | 1 | " |
| | | 621 | | | 1 | | " |
| [illegible] | [illegible] * | 631 | | | 1 | | 9/9/03 |
| [redacted] | [redacted] | 617 | 2 | | 1 | | " |
| | | 632 | 2 | | 1 | | |
| | | 620 | 2 | | 1 | | 9/15/03 |
| [illegible] | [illegible] * | 601 | 2 | | | | " |
| | | 631 | 2 | | | | |
| [redacted] | [redacted] | 634 | 2 | | 1 | | " |
| | | 632 | 2 | | 1 | | 9/16/03 |
| | | 637 | 2 | | 1 | | " |
| | | 619 | 2/5 | | 1 | | 9/17/03 |
| | | 620 | | | | | 9/17/03 ① C.P. |
| | | 638 | Care Pkg | | | | " " |

| NAME | DATE | SOC/LEG | SOAP | CARE PKG | RAZOR |
|---|---|---|---|---|---|
| [redacted] | 9/18/03 | 2 | | ✓ | |
| [redacted] | " " | 2 | ✓ | | |
| [redacted] | 9/19/03 | 2 | | | |
| [redacted] | " | | ✓ | | |
| [redacted] | 9/22 | 2 | ✓ | / | |
| [redacted] | " " | 2 | ✓ | ✓ | |
| * Fernandez [illegible] | 9/23/03 | 2 | / | / | |
| [redacted] | " | 2 | / | | |
| [redacted] | " | 2 | / | | |
| [redacted] | " | 2 | / | | |
| [redacted] | " | 2 | / | | |
| [redacted] | " | 2 | | | |
| [redacted] | 9/24/03 | 2 | / | / | |
| [illegible] | | | | | |
| [redacted] | 9/25/03 | 2 | | / | |
| [redacted] | 9/26/03 | | ✓ | | |
| [redacted] | 9/26/03 | | | ✓ | |
| * Fernandez [illegible] | 9/27/03 | * | | ✓ | |
| Fernandez [illegible] | 9/29/03 | 2 | ✓ | | |
| [redacted] | " " | 2 | ✓ | | |
| [redacted] | " " | 2 | | | |
| [redacted] | " " | 2 | | | |
| [redacted] | " " | 2 | ✓ | | |
| [redacted] | " " | 2 | ✓ | | |
| [redacted] | " " | 2 | ✓ | ✓ | |
| [redacted] | " | 2 | ✓ | | |
| [redacted] | " " | | | ✓ | |
| [redacted] | " " | 2 | ✓ | | |
| [redacted] | 10/1/03 | * 5 LEG | | | |
| [redacted] | " " | 2 soc / 1 LEG | (i) | | |
| [redacted] | 10/2/03 | | / | | / |
| [redacted] | 10/3/03 | | / | | / |
| * Fernandez [illegible] | | LEGAL MANILA MAILED * | | | |
| [redacted] | 10/4/03 | 2 5 | / | | / |
| [redacted] | " | 2 | / | | / |
| [redacted] | " | 2 | / | | / |
| * Fernandez [illegible] | " | 2 2 | | / | |
| [redacted] | " | 2 | | / | |
| [redacted] | 10/6/03 | 2 5 | / | | |
| [redacted] | 10/7/03 | 2 | / | | |
| [redacted] | " | | / | | |
| [redacted] | " | 2 | / | | |
| [redacted] | 10/8/03 | 2 | / | | |
| [redacted] | " | 5 | | / | |
| [redacted] | 10/14/03 | 2 | / | | |
| * Fernandez 2779[illegible] | 10/14/03 | 2 2 | / | | |
| [redacted] | " | 2 | / | | |
| [redacted] | " | 2 2 | / | | |
| [redacted] | " | 2 | / | / | |
| [redacted] | " | | / | | / |

M

# FREE POSTAGE ENVELOPE LOG SOUTH BLOCK 6

| NAME | # | CELL | DATE | SOC/LEG | SOAP/RAZOR | C/P |
|------|---|------|------|---------|------------|-----|
| ███████████ | | 50638 | 10/4/03 | 2   5 | / | / |
| ███████████ | | 621 | " | 2 | / | |
| ███████████ | 3 | 601 | 10/4/03 | 2 | / | |
| ███████████ | | 647 | 10/6/03 | | / | / |
| ███████████ | | 641 | " | 2 | | / |
| ███████████ | | 650 | " | | / | |
| ███████████ | | 632 | 10/6/03 | 2 | / | |
| ███████████ | | 603 | 9 | 2 | / | |
| ███████████ | | 620 | 10/6/03 | 2 | / | |
| | | 605 | " | 2 | / | |
| | | 648 | " | 2 | / | / |
| | | 634 | " | 2 | / | |
| ██████████ 371.64 | | 631 | " | 2 | | |
| ██████████ | | 634 | 10/7/03 | 2 | | / |
| | | 648 | " | 2 | | |
| | | 640 | " | | 3 | |
| ████████ | | 600 | 10/9/03 | 2 | / | |
| ████████ | | 603 | 10/9/03 | 2 | / | |
| ████████ | | 605 | 10/9/03 | 2 | / | |
| ████████ | | 648 | " | 2 | | |
| ████████ | | 639 | " | 2 | / | |
| ████████ | | 603 | 10/9/03 | 2 | | |
| ████████ | | 634 | 10/9/03 | 2 | | |
| ████████ | | 640 | " | 2 | / | / |
| ████████ | | 600 | " | 2 | | / |
| ████████ | | 641 | 11/4/03 | 2 | | |
| ████████ | | 614 | 11/4/03 | 2 | / | |
| ████████ | | 633 | " | 2 | / | |
| ████████ | | 652 | " | 2 | | |
| ████████ | | 648 | 11/2/03 | 2 | | |
| ████████ | | 641 | 11/2/03 | 2   2 | / | |
| ████████ | | 600 | " | 2 | | |
| ████████ | | 634 | " | 2 | | |
| ████████ | | 613 | " | 2 | | |
| ████████ | | 614 | 11/3/03 | 2 | | |
| ████████ | | 631 | 11/03/03 | | | |
| ████████ | | 633 | 11/3/03 | 2 | | |
| ████████ | | 613 | 11/3/03 | 3 | | |
| ████████ | | 632 | " | | / | |
| ████████ 78770 | 614 | 4/10/03 | 2 | | / | |
| ████████ | | | 11/7/03 | | / | |
| ████████ | 620 | " | 2 | | / | |
| ████████ | 634 | " " | 2 | | / | |
| ████████ | 622 | | | | | |
| ████████ | 620 | 11/18/03 | | | | / |
| ████████ | | " | | | | |
| ████████ | 608 | 11/19 | 2 | / | | / |
| ████████ | 652 | 11/19 | 2 | / | | / |



our files

# Memorandum

**To:** Fernandez, Luis #279900

**CC:** Major Farrell

**From:** Counselor Halleran

**Date:** 08/16/02

**Re:** Envelopes

---

I am in receipt of your letter to Major Farrell and am responding to same.
Counseling Supervisor Bartholomew as well as myself, are correct in our communication to you with regard to envelopes. As previously discussed with you when you were housed in North Block 1, indigency is calculated through a computer program at inmate accounts – and, as you can see from the attached summary sheet of your account from July, you were not determined to be indigent on the particular day that this report was run. As this status may fluctuate on your account based upon monies received by you, you may then become indigent according to the proper time frame calculated by the software program utilized by DOC staff. This counselor issued three (3) manilla envelopes for legal purposes to you on 7-2-02 and two (2) envelopes for social purposes (as you requested in my office) on 7/9/02. These were given to you at that time as your account was deemed to be indigent. As you are well aware, each time you entered my office during an open door session, your account balance was checked by me, to verify indigency.

I trust this clarifies the issue for you.

cc: CS Bartholomew

[DISPLAY TRUST ACCOUNTS]

CHE114 CONNECTICUT DEPARTMENT OF CORRECTION Date: 07/24/2002

0000278300 | FERNANDEZ | LUIS | 07/22/1976

2 | 125-G; : | ACTIVE-IN

Total: 83.66 Current: 83.66

| Code | Type | Description | Balance | Date | |
|---|---|---|---|---|---|
| 2101 | REG | SPENDABLE | .16 | 05/20/2002 | 25 |
| 2102 | SAV | SAVINGS | .00 | | |
| 2103 | BONDS | BONDS | .00 | | |
| 2104 | PLRA | PLRA | 83.50 | | |

not indigent as of 7-24-02





# Inmate Request Form

**Connecticut Department of Correction**

CN 9602
Rev. 1/8/02

**Inmate Name** Luis FernanDez
**Inmate no.** 279900

**Facility** Cheshire
**Housing unit** SB105
**Date** 12/29/02

**Request** to be Assisted with 2 Manila envelopes, Care pakage and Lisa Soaps ; T-shirt and Boxers are Also some of the Items needed Thank you...

(continue on back if necessary)

**Previous Action Taken** with your person Captain Muniz on or About Dec 20, 2002, were in response I was told that the 2 manila envelopes will be provided and in case to write Another request indicating Any other Item since this writer Continues to be Indigent

(continue on back if necessary)

**Submitted to** Capt. Muniz
**Date** 12/29/02

**Acted on by**

**Action Taken and/or Response** ITEMS PROVIDED.

(continue on back if necessary)

**Response to Inmate Date** 12/31/02

**Staff Member Signature** Capt. Muniz

Capt. Muniz
Inmate Luis FernanDez # 279900

STATE OF CONNECTICUT DEPARTMENT OF CORRECTION

SRF 204717

Special Request Form
Connecticut Department of Correction

SB 105

Inmate No. 279900 Date 12-23-02

Inmate Name FERNANDEZ, LUIS

Payee Information

INSUFFICIENT FUNDS

Name

Street

City

State, Zip Code

Reason POSTAGE ON MANILLA ENVELOPE

Amount $ 3.95

Inmate Signature
(in presence of counselor)

Counselor Signature: c/c

Date: 12-23-02

Approvals:

Counselor Supervisor

Business Office Use Only:

| | Number | Amount | Date |
|---|---|---|---|
| Check | | | |

Warden/Dep. Warden

Business Office Staff Releasing Funds
Date

APPROVAL STAMP: APPROVED

Original: I/M Accts.
Pink: Inmate
Yellow: Counselor

COMPLETE



# Inmate Request Form

**Connecticut Department of Correction**

CN 9602
Rev. 1/8/02

Inmate Name: Luis FernanDez
Inmate no.: 272900
Facility: Cheshire
Housing unit: SB105
Date: 12/8/02

Request: to be Assisted with 2 photocopies of 5 pages documents for Court plus the other Already requested since the past week.

(continue on back if necessary)

Previous Action Taken: On 12/4/02, it was informed by your person U.M. Capt. Muniz that Ms. Hall had/has in her possession the request for the 2 photocopies of 52 pages documents which need to be sent to the Courts. Ms. Hall was not Available for 2 days and the day she was in on 12/4/02 other inmates were provided copy's w I-D

(continue on back if necessary)

Submitted to: U.M. Capt Muniz
Date: 12/8/02

Acted on by:

Action Taken and/or Response: Done

(continue on back if necessary)

Response to Inmate Date:

Staff Member Signature: Capt [signature]



# Inmate Request Form

**Connecticut Department of Correction**

CN 9602
Rev. 1/8/02

Inmate Name: Luis FernanDez
Inmate no.: 279900
Facility: Cheshire
Housing unit: SB105
Date: 12/2/02

Request: to be assisted with Notary, A Care pakage, 10SA SOAPS And 2 Manila envelopes.

(continue on back if necessary)

Previous Action Taken: 1) Since Nov. 25, 2002 I have been writing for A Care pakage and 10SA SOAPS to your person on the 26, Nov. 2002. 2) Notary was requested Also since 26, Nov. 2002 were even this was only suppose to be given Assistance on wednesday 3) Counselor Brozozwski does not have Manila envelopes And in these legal documents →

(continue on back if necessary)

Submitted to: Unit Manager Capt Muniz
Date: 12/2/02

Acted on by:

Action Taken and/or Response: REQUEST HONORED ON 12/4/02
Capt Muniz

(continue on back if necessary)

Response to Inmate Date

Staff Member Signature

C.C. U.M. Capt Muniz
Inmate: Luis FernanDez # 279900

# Inmate Request Form

**Connecticut Department of Correction**

WARDEN'S CN 9602
Rev. 1/8/02
OCT 15 '02

Inmate Name: Luis FernanDez
Inmate no.: 279900

Facility: CHeshire
Housing unit: SB603
Date: 10-11-02

Request: to be Assisted with A toothpast and OR CanepaKage which C.T.O. Bailey informed my person today that "They" said to provided me with only one canepaKage per week, now A CanepaKage toothpast is not A regular size to last any person 7 Days which A change of the decision →

(continue on back if necessary)

Previous Action Taken

(continue on back if necessary)

Submitted to: WarDen RoDrigues
Date: 10-11-02

Acted on by

Action Taken and/or Response: per my Conversation w/ Lt Harlow on 10/21/02 she has provided you with such request. In the future please see/write your unit manager

(continue on back if necessary)

Response to Inmate Date: 10/21/02

Staff Member Signature: [signature]

Copy Lt. Harlow
Capt. Knight
[illegible]

# EXHIBIT G

18

08/14/2002 09:03 DEPARTMENT OF CORRECTIONS Page 5 Of 5

CHE106 CONNECTICUT DEPARTMENT OF CORRECTION OTRTASTA

4.10.0.0.9 TR

TRUST ACCOUNT STATEMENT

DOC: 0000279900 Name: FERNANDEZ, LUIS DOB: 07/22/1976

LOCATION: 125-F

Max Date:

| DATE | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
|---|---|---|---|---|
| 04/15/2002 | CRS | CRS SAL ORD #997148 D2 | ( 5.65) | 36.85 |
| 04/26/2002 | DMR | Mail Receipts 125 | 12.49 | 49.34 |
| 04/26/2002 | DED | Deduction-PLRA-11132001 | ( 2.50) | 46.84 |
| 04/26/2002 | HOA | HOLD 125 PLAYBOY ENT. REFUND 278334 | ( 12.49) | 34.35 |
| 04/30/2002 | CRS | CRS SAL ORD #1025018 D2 | ( 12.92) | 21.43 |
| 05/01/2002 | CRS | CRS SAL ORD #1025995 D2 | ( 4.86) | 16.57 |
| 05/03/2002 | CRS | CRS SAL ORD #1033149 D2 | ( 13.75) | 2.82 |
| 05/06/2002 | WCOP | Copies 125 | ( 2.75) | 0.07 |
| 05/11/2002 | HOR | Remove Hold | 12.49 | 12.56 |
| 05/13/2002 | CRS | CRS SAL ORD #1050999 D2 | ( 4.42) | 8.14 |
| 05/20/2002 | CRS | CRS SAL ORD #1062575 D2 | ( 7.98) | 0.16 |

Inmate Fernandez acknowledges by signature that he received one (1) care package on August 14, 2002

LF

S.Z. Ahmed, CCS

# FREE POSTAGE ENVELOPE LOG SOUTH BLOCK 6

2002

| NAME | NUMBER | CELL | SOC LEG | DATE | |
|------|--------|------|---------|------|--|
| | | 651 | 2SK | 8/12 | |
| | | 688 | 2KC | 8/12 | |
| | | 679 | 2SKC | 8/12 | |
| [redacted] | 233570 | 631 | 2KC | 8/12 | |
| | | 633 | 2KC | 8/22 | |
| | | 637 | 2SKC | 8/22 | 1 SUM |
| | | 635 | 2SKC | 8/27 | 1 SUM |
| | | 639 | 2KC | " | 1 SUM |
| [redacted] | | 644 | 2KC | " | 1 SUM |
| | 233565 | 683 | 2KC | 8/30 | SUM |
| | | 682 | 3KC | 8/30 | SUM |
| | | " | 2SKC | 9/3 | SUM |
| | | 679 | 2KC | " | " |
| | | 634 | 2SKC | " | SUM |
| | | 687 | 3KC | 9/3 | SUM |
| | | 689 | 2KC | " | SUM |
| [redacted] | 233140 | 60 | 2SKC | 9/5 | |
| | | 687 | 2KC | 9/9 | SUM |
| | | 677 | 2KC | 9/9 | SUM |
| | | 638 | 2KC | 9/10 | SUM |
| | | 634 | 2KC | 9/11 | SUM |
| | | 637 | 2KC | 9/11 | SUM |
| | | | | | |
| [redacted] | 233140 | 641 | 2KC | 10/8 | SUM |
| | | 651 | 2KC 2KC | 10/11 | SUM |
| [redacted] | 233140 | 641 | 2KC | 10/11 | SUM |
| | | 683 | 2KC | 10/14 | SUM |
| | | 645 | 3KC | 10/14 | SUM |
| | | 640 | 3KC | 10/14 | SUM |
| | | 633 | 2KC | 10/11 | SUM |
| | | 644 | 2KC | 10/11 | SUM |
| | | 635 | 3KC | 10/14 | SUM |
| | | 650 | 2KC | 10/16 | |
| | | 644 | 2KC | 10/17 | SUM |
| | | 680 | 3KC | 10/13 | SUM |
| | | 644 | 3KC | 10/13 | SUM |
| | | 607 | 2SKC | 10/17 | SUM |
| | | 650 | 2KC | 10/10 | SUM |
| | | 640 | 2KC | " | |

# EXHIBIT H

A.D. 10.18, Food Services - Prepared for signature 4/13/99 - effective 5/17/99

1. Policy. Department facilities shall serve nutritious meals in a cost effective manner while maintaining high levels of security, safety and sanitation. The quality of food services shall be maintained at the highest level and subject to an inspection and reporting program.

2. Authority and Reference.

A. Connecticut General Statutes, Sections 18-81 and 19a-36.
B. Regulations of Connecticut State Agencies, Section 19-13-B42.
C. Public Health Code Regulations, Sections 19-13-B42 and 19-13-B77.
D. American Correctional Association, Standards for Administration of Correctional Agencies, Second Edition, April 1993, Standard 2-CO-4C-01.
E. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-2E-06 through 3-ALDF-2E-08, 3-ALDF-4C-01 through 3-ALDF-4C-08.
F. American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4294 through 3-4309.
G. American Correctional Association, Correctional Standards Supplement, January 1998, Standards 3-4306 and 3-ALDF-4C-4C.

3. Definitions. For the purposes stated herein, the following definitions apply:

A. Common Fare. A diet which meets all nutritional requirements and reasonably accommodate recognized religious dietary restrictions.
B. Master Menu. A 28 day menu cycle set up to meet or exceed the Recommended Dietary Allowance (RDA) for kilocalories, protein, carbohydrate, potassium, iron, vitamin A, vitamin C, vitamin D, thiamin, riboflavin, niacin, folate, vitamin B-12 and calcium for all populations assessed.
C. Registered Dietician. A person who meets requirements for membership in the American Dietetic Association, has successfully completed the examination for registration and maintains continuing education requirements.
D. Therapeutic Diet. A diet specially prescribed by a physician for medical reasons.

4. Administrative Responsibilities.

A. Director of Food Services. The Director of Food Services shall develop, coordinate and audit the food service function for the Department, and shall provide technical supervision to each facility. The Director of Food Services shall directly supervise the Food Production Manager and District Managers.
B. District Food Service Manager. The district managers shall supervise and oversee the facilities assigned, conduct quarterly Food Service Audits, Quarterly Inventory Audits, review all facility purchase, monitor and schedule training for staff, conduct counseling and disciplinary action, monitor and maintain a reasonable food cost, oversee the Food Service staff and staff cost, maintain cleanliness and sanitation, shall complete any necessary reports, implement the master menu and therapeutic diets. The District Managers report to the Director of Food Services, and consult with the Complex Wardens on matters pertaining to the facility food service functions and shall report through the chain of command on matters pertaining to the daily food service operation.
C. Production Manager. The manager shall supervise the daily