UNITED STATES DISTRICT COURT    02CV2252CFD
DISTRICT OF CONNECTICUT

Luis Fernandez          United States District Court          PRISONER
                        District of Connecticut,
                        FILED AT   BRIDGEPORT          CIVIL NO. 3:02 CV 2252
v.                                                     (CFD) (WIG)
                        May 18 2004
                        Kevin F. Rowe, Clerk
                        By: S. Baldwin
JOHN ARMSTRONG, et al    Deputy Clerk          MAY 14, 2004

**PLAINTIFF'S AFFIDAVIT IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT.**

Luis Fernandez, declare under penalty of perjury:

1. I am the plaintiff in the above-entitled case. I make this declaration in opposition to defendant's motion for summary judgment as to their allegations of no genuine issue as to any material fact.

2. Defendants claim in their motion that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. In reality, there are many facts in dispute.

3. The defendants claim in their motion that in 2002, Mr. Fernandez made many requests for free hygiene products and mail and his requests were addressed. In fact, I went without

1 of 8

hygiene products which the D.O.C. is required to provide in form of carepackage see attached marked Exhibit 'B' undisputed in the Amended Complaint showing the Actual copy of a carepackage items of hygiene. My mail was continuesly interfiered with and the requests submitted were not being honored which I filed line Grievance level 1 on 8/7/02 Attached marked Exhibit 'A' undisputed in the Amended Complaint disposition denying remedy the Grievance level 1 for the necessary basic elements of hygiene Appealed on 9/17/02 do to the violation of percepts set forth by ADM. Dir. 9.6, in the Amended Complaint Attached marked Exhibit 'K' undisputed Also showing the failure to respond to the Inmate Grievance Form B, level 2 and 3, Appeal As specified by ADM. Dir. 9.6.

4. The defendants claim that Indigent inmates were eligible for A minimum of free mailing plus Additional correspondence to courts As reasonably needed, and free toothbrushes, toothpaste or tooth powder, soap, shampoo, comb, disposable razor, and sanitary napkins, tampons' As appropriate. In fact, Administrative Dir. 10.7 (4)(D) states ", Additional free correspondence to courts and Attorney's May be authorized by the unit Administrator based upon the reasonable needs of the inmate "; and ADM. Dir. 6.10 (24) (B) states issued items shall not be removed As punishment Attached marked As Exhibit '1' ADM. Dir. 6.10 sec. 24 (B) page 7 of 13 and in the Complaint Ex. 'C' undisputed

5. The defendants claim that an Indigent inmate is one who has less that $5.00 in his or her inmate account at admission, or whose account has not exceeded $5.00 for the previous 90 days. In fact, Indigency is calculated through a Computer program at inmate accounts which an inmate can become Indigent according to the proper time frame calculated by the software program utilized by D.O.C. staff attach marked Ex "2" Memorandum from Counselor Hallenn, I have had in inmates account .16¢ Indigent since 5/20/02 Attached marked Exhibit "F" undisputed in the amended complaint showing trust account statement date 8/14/02 acknowledge sign by defendant Grievance Coordinator AHMED.

6. The defendants claim that the Plaintiff did not qualify as an indigent under Dept. of Corrections Directives until on and after August 20, 2002, due to the fact that he had funds in his inmate account in excess of the level required for indigency status. In fact I held in the inmate trust account statement $0.00 (Zero) Account Balance total, .16¢ Spendable Balance and P.L.R.A. holdings $83.66 which I could not spend Attached marked Ex "3" Trust Account Statement date 8/14/02 and in the amended complaint Exhibit "F" undisputed. Shows I had been without funds before August 20, 2002 nor exceeded the level require for indigent.

3 of 8

7. The defendants claim that records of the Department of Correction show that he received free hygiene items and mail after August 20, 2002, and in some cases in advance of that date. In fact, I only received a care package on August 14, 2002, see attached marked Exhibit "F", undisputed in the Amended Complaint, which defendants did _not_ record in the Department of Correction records _NOR_ did the alleged records of the Department of Correction can confirm in its totality if a D.O.C. staff actually provided a care package or free hygiene items and mail after August 20, 2002 or that in some cases in advance of that date alleged.

8. Defendants claim that documents in this case show that plaintiff received a free hygiene "care" package on August 14, 2002, containing the free products under Directive 6.10 (24), and 5 free legal mail on 8/22/02 and 2 free social mail on August 29, 2002 plus soap. In fact, I had to submit a line of grievance on 8/7/02 regarding deprivation of basic elements of hygiene items attached marked Ex. "A" undisputed in Amended Complaint were 7 day's after defendant Grievance Coordinator Ahmed came to Unit 6 Cell 03 acknowledging I was not given reasonable opportunity to shower, or brush my teeth for approx. 2 weeks and more while in North Block 1 Cell 18 which defendant Grievance Coordinator Ahmed said "I

4 of 8

Cannot be deprived from basic elements of hygiene or any other while at any D.O.C. in Connecticut since the Account Reflex 0.16 ¢ and plus 90 days have passed which am consider indigent," before giving me a carepackage which contained an 8 ½ cm toothpaste, a 1.5 Fl Oz (42.5 ml) deodorant, 2 (two) inch Antibacterial deodorant hand soap, a shampoo & body bath product 2 fl oz (56 ml), four (4) Sanitary napkins and a soft toothbrush, see in Amended Complaint Exhibit 'B' undisputed showing Actual copy of a hygiene carepackage and herein Attached marked Exhibit "4", where NO social envelope or legal envelopes was provided which I submitted a lone Emergency Inmate Grievance Form A, level 1 date 8/19/02 Attached marked Exhibit 'G' undisputed in Amended Complaint as inference towards the wanton and reckless denial of basic elements of hygiene items and the deprivation of privileged, postage and none privileged postage.

9. The defendants claim that In this same time period, the Department of Corrections provided for inmates' basic needs, regardless of an inmate's ability to pay, including food, clothing, shelter and medical care. In fact, I was NOT able to pay or buy the basic elements of hygiene for approx 4 months and more which I filed Grievances regarding the need to be provided

with the implements to keep clean and adequate opportunity to shower, wash, brush my teeth and shave where the Department of Correction was aware and failed to reasonably nor adequatly provided with the hygiene items so I could shower or keep a clean hygiene see Attached marked Exhibit's "A", "K", "G", And "L" undisputed in the Amended complant showing Grievances submitted.

10. The defendants claim that records of the Department of Correction show that plaintiff filed grievances on these points, and his grievances were ruled upon on their merits. In fact, I submitted on 8-7-02 line Grievance Form A, level 1 regarding deprivation of human need Attached marked in the Amended Complant as Exhibit "A" undisputed which ruled or disposition denied the remedy requested so I Appealed the disposition denied decision on 9/17/02 to An Inmate Grievance Form B, levels 2 and 3 Attached marked in the Amended Complant As Exhibit "K" undisputed were no ruled was entered nor disposition decision on Any merit. Also, I submitted on 8/19/02 A line Emergency Inmate Grievance Form A, level 1 regarding wanton and reckless denial of basic elements of hygiene items And the deprivation of privileged postage And nonprivileged postage to indigent inmate "Luis Fernandez", this writer Attached marked in

6 of 8

the Amended Complaint As Exhibit 'G' undisputed which Ruled or disposition ReJecTed the remedy Requested so I Appealed the desposition ReJecTed decision on 8/23/02 to An Inmate Grievance Form B, levels 2 and 3 Attached marked in the Amended Complaint As Exhibit 'L' undisputed were no Ruled was entered nor disposition decision on Any Merit. Furthermore, the Department of Correction show NO Records of these Grievances submitted As it CAN be provided with ATTachment D Inmate Grievance Procedure, Grievance log Attached marked As Exhibit "5" herein show the Actual Form CN 9604 which defendant left out and defendant Affidavit of major Jonathan Hall date April 27, 2004 Exhibit B fails to provide.

11. The defendants Claim that In Connecticut, there is An Inmate Legal Assistance Program ("LAP") which provides civil legal Assistance to inmates in All D.O.C. facilities. Conn. Gen. Stat. § 18-81. In fact, I.L.A.P.'s Contract strictly limits I.L.A.P. to giving Advice on civil legal issues and procedures nor CAN Assist with An interpetate in this case which I have Requested the Court to Consider for Appointing Representation in this CASE, see Plaintiff Renew motion For Appointment Of Counsel. date May 14, 2004.

12. These factual disputes Cannot be resolved without a trial.

Wherefore, defendants' Motion for Summary Judgment should be denied.

RESPECTFULLY SUBMITTED

Luis Fernandez    Pro se
M. W. C. I.
1153 East St. South,
Suffield, CT 06080

I declare to the best of Knowledge that the foregoing is true And Correct.

May 14, 2004

Luis Fernandez
Pro Se

CERTIFICATION

I hereby Certify that a Copy of the foregoing was mailed to the following defendants Attorney on this 14 day of May, 2004.
Robert F. Vacchelli,
Ass. Att. Gen.
110 Sherman Street, Hartford, CT 06105

Luis Fernandez

8 of 8



| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF | |
|---|---|---|---|
| 6.10 | September 25, 2000 | 7 | 13 |
| TITLE | | | |
| Inmate Property | | | |

designated wall space per inmate, shall be permitted to display pictures or wall decorations. Nothing attached to a wall shall mar or deface the wall. Neither nudity nor sexually explicit pictures shall be displayed anywhere in the facility (e.g., walls, in lockers). In all restrictive housing units, inmates shall not be permitted to display pictures or wall decorations.

23.   **Confiscation of Property Items.** Possession of excessive quantities as defined by this Directive, unauthorized use of an allowable item, or creating a nuisance such as playing a radio, cassette player or television too loudly or during time such items may not be used, shall be cause for confiscation. Confiscation shall require that a Disciplinary Report be issued in accordance with Administrative Directive 9.5, Code of Penal Discipline. A receipt shall be given for any item confiscated. A copy of the Disciplinary Report may serve as the inmate's receipt. The item may be confiscated pending disposition of the Disciplinary Report. If an inmate is found guilty such items may be disposed of as specified in Section 28.

24.   **State Issued Items.** Each inmate shall be provided state issued clothing, footwear, and linen in accordance with the Inmate Property Matrix (Attachment A).

   A.   In addition, an indigent inmate as defined in Section 3, shall, when needed, be provided only the following items: (1) toothbrush; (2) toothpaste or toothpowder; (3) soap; (4) shampoo; (5) comb; (6) disposable razor, (7) sanitary napkins/tampons as appropriate; and (8) five (5) stamped envelopes monthly.

   B.   State issued items shall not be removed as punishment. However, any item may be removed or restricted for legitimate health, safety or security reasons.

   C.   All uniforms provided for work assignments by a facility shall be used only for the purposes intended and shall not be counted as part of the totals in the Inmate Property Matrix (Attachment A). However, work uniforms shall be limited to the amount necessary for the work assignment.

   Whether property is inmate owned or state issued, the total amount in the inmate's possession shall not exceed the maximum amount allowed in accordance with Section 16 and Attachment A.

25.   **Inter-Facility Transfers.** When an inmate is transferred from one facility to another, the following procedures shall be observed:

   A.   **Inventory and Packing.** Each inmate shall be provided with a maximum of five (5) container(s) to pack the inmate's own property. Inmates shall bring it to a designated area for inventory by an assigned employee. Exceptions to this procedure may be authorized by the Shift Commander when: (1) the inmate's behavior or physical condition prevents the inmate from packing; (2) the inmate has been transferred from court without returning to the facility; or (3) an inmate is moved to a restrictive housing or Level 4 Close Custody unit where authorized property is



# Memorandum



**To:**    Fernandez,Luis #279900

**CC:**    Major Farrell

**From:**  Counselor Halleran

**Date:**  08/16/02

**Re:**    Envelopes

---

I am in receipt of your letter to Major Farrell and am responding to same.
Counseling Supervisor Bartholomew as well as myself, are correct in our communication to you with regard to envelopes. As previously discussed with you when you were housed in North Block 1, indigency is calculated through a computer program at inmate accounts – and, as you can see from the attached summary sheet of your account from July, you were not determined to be indigent on the particular day that this report was run. As this status may fluctuate on your account based upon monies received by you, you may then become indigent according to the proper time frame calculated by the software program utilized by DOC staff. This counselor issued three (3) manilla envelopes for legal purposes to you on 7-2-02 and two (2) envelopes for social purposes (as you requested in my office) on 7/9/02. These were given to you at that time as your account was deemed to be indigent. As you are well aware, each time you entered my office during an open door session, your account balance was checked by me, to verify indigency.

I trust this clarifies the issue for you.

1







CN 9604

YEAR _____
LCTR No. _____
PAGE _____

INMATE GRIEVANCE PROCEDURE
GRIEVANCE LOG: [] LINE    [] MEDICAL
GC _____

STATE OF CONNECTICUT
DEPT. OF CORRECTION
UNIT _____

. reverse side of this log may be used for additional comments on individual grievances

| | | | L1 | | | L2 | | | |
| | | | L3 | | | | | | T |
| | | | L1 | | | L2 | | | |
| | | | L3 | | | | | | T |
| | | | L1 | | | L2 | | | |
| | | | L3 | | | | | | T |
| | | | L1 | | | L2 | | | |
| | | | L3 | | | | | | T |
| | | | L1 | | | L2 | | | |
| | | | L3 | | | | | | T |
| | | | L1 | | | L2 | | | |
| | | | L3 | | | | | | T |
| | | | L1 | | | L2 | | | |
| | | | L3 | | | | | | T |
| | | | L1 | | | L2 | | | |
| | | | L3 | | | | | | T |
| | | | L1 | | | L2 | | | |
| | | | L3 | | | | | | T |
| | | | L1 | | | L2 | | | |
| | | | L3 | | | | | | T |





### FROM THE DESK OF
### CORRECTIONAL COUNSELOR GALLICK

TO: LIBRARIAN
RE: INDIGENT INMATE
NAME: FERNANDEZ, LUIS 279900
DE:

AS OF TODAY'S DATE THIS LETTER SERVES AS NOTICE AT
AFOREMENTIONED INMATE IS INDIGENT IN CONSISTENT WITH
DIRECTIVES

*COUNSELOR GALLICK*





| State of Connecticut<br>Department of Correction | DIRECTIVE NUMBER<br><br>2.6 | EFFECTIVE DATE<br><br>January 15, 1999 | PAGE 1 OF<br><br>9 |
|---|---|---|---|
| **ADMINISTRATIVE DIRECTIVE** | SUPERSEDES:<br>Employee Discipline – 7/1/96 | | |
| APPROVED BY<br>12/15/98 | TITLE:<br><br>Employee Discipline | | |

1.  <u>Policy.</u>  The Department of Correction shall exercise consistent and equitable discipline in accordance with progressive disciplinary practices.

2.  <u>Authority and Reference.</u>

    A.  Connecticut General Statutes, Sections 5-201, 5-202, 5-240, 5-266(a) and 18-81.
    B.  Regulations of Connecticut State Agencies, Sections 5-201-1 through 5-201-3, 5-240-1 through 5-240-3, 5-240-5a and 5-266(a)-1.
    C.  Collective Bargaining Contracts:

        1.  Administrative and Residual (P-5) Bargaining Unit, Article 14, June 1994.
        2.  American Federation of State, County and Municipal Workers (NP-3) Bargaining Unit, Article 16, July 1994.
        3.  American Federation of State, County and Municipal Workers (NP-4) Bargaining Unit, Article 13, July 1994.
        4.  Connecticut Employees Union Independent (NP-2) Bargaining Unit, Article 17, July 1994.
        5.  Connecticut State Employees Association (P-3B) Bargaining Unit, Article 15, July 1993.
        6.  Connecticut State Employees Association (P-4) Bargaining Unit, Article 15, July 1987.
        7.  New England Health Care Employees Union, District 1199 (NP-6) Bargaining Unit, Article 33, July 1997.
        8.  New England Health Care Employees Union, District 1199 (P-1) Bargaining Unit, Article 33, July 1997.

    D.  American Correctional Association, Standards for the Administration of Correctional Agencies, Second Edition, April 1993, 2-CO-1C-01 and 2-CO-1C-04.
    E.  American Correctional Association, Standards for Adult Probation and Parole Field Services, Second Edition, March 1981, Standard 2-3032.
    F.  American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standard 3-4048.
    G.  American Correctional Association, Adult Local Detention Facilities, Third Edition, March 1991, 3-ALDF-1C-09, 3-ALDF-1C-15 and 3-ALDF-1F-01.
    H.  Administrative Directives 1.10, Investigations and 2.1, Equal Employment Opportunity and Affirmative Action.

3.  <u>Definitions.</u>  For the purposes stated herein, the following definitions apply:

    A.  <u>Appointing Authority.</u>  The Commissioner of Correction or designee.
    B.  <u>Appointment.</u>  An appointment to a position in the classified service.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
|---|---|---|
| 2.6 | January 15, 1999 | 3        9 |
| TITLE | | |
| Employee Discipline | | |

6. <u>Penalties</u>. In accordance with the principles of progressive discipline, the penalties shall include:

   A. <u>Oral or Written Reprimand</u>. An oral or written reprimand shall normally be used when a first offense warrants some form of disciplinary action. The purpose of reprimand shall be to correct the specific act or omission that is the subject of the reprimand and to place the employee on notice that continued misconduct may result in more severe discipline. An oral reprimand shall be documented in the employee's personnel file.

   B. <u>Suspension</u>. Suspension shall be imposed for a specific and serious breach of written rules for reasons which may include, but are not restricted to, misconduct, insubordination, or neglect of duty. A suspension may be warranted for a first offense which is a serious breach of rules or following the issuance of an oral or written reprimand. Suspension without pay or reduced pay shall not exceed 60 days in any calendar year.

   C. <u>Demotion</u>. When an employee, based on inefficiency, incompetence or misconduct, cannot carry out the duties and responsibilities of the assigned position yet may demonstrate potential as a good, steady and dependable employee in a less demanding assignment, a demotion should be considered. An unsatisfactory service rating may result in a demotion. A demotion shall not be made earlier than three (3) months after a permanent appointment.

   D. <u>Dismissal</u>. Dismissal is the most severe penalty in the employee disciplinary process and shall be reserved for situations when an employee has repeatedly demonstrated an inability to follow agency and/or unit directives, procedures or orders or when other forms of disciplinary action have been exhausted or for first offenses which threaten the security or integrity of the unit or conduct of such a serious nature that dismissal is warranted, including, but not limited to those offenses outlined in Section 10 of this Directive.

7. <u>Disciplinary Factors</u>. A Unit Administrator, in determining what disciplinary action to take, should consider the following:

   A. The employee's past work record including disciplinary history and years of service.

   B. The effect of the offense on the organization's efficient operation.

   C. The seriousness or type of the offense relative to the employee's duties and responsibilities within the organization including the possible impact on other employees.

   D. Any mitigating or aggravating circumstances surrounding the offense.

   E. The uniformity of enforcement.

   F. The timeliness of the disciplinary action.

   G. The propriety of the work rules the employee violated.

8. <u>Offenses Resulting in Reprimand</u>. The following offenses shall normally result in a reprimand for the first offense:

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF | |
|---|---|---|---|
| 2.6 | January 15, 1999 | 5 | 9 |

| TITLE | |
|---|---|
| | Employee Discipline |

P.  Engaging in any activity which is detrimental to the best interests of the agency or of the state.

Q.  Violation of the code of ethics and conflict of interest law and policy.

R.  Inappropriate relationship with an inmate who is under the jurisdiction of the Department.

S.  Lying or providing false information regarding an incident.

11.  <u>Off Duty Employee Misconduct</u>.  An employee may be disciplined up to and including dismissal for off duty misconduct if the conduct affects the Department's relationship with the employee.  Discipline may occur when the conduct affects the employee's ability to perform the job; other employees refuse to work with the employee or the Department is harmed, either directly or indirectly, as a result of the employee's conduct.  The Department shall conduct its own investigation in such circumstances.  The outcome of the Department's investigation shall not be dependent upon the finding of any criminal court concerning the employee's guilt.

12.  <u>Standards for Disciplinary Proceedings</u>.  Disciplinary action shall be taken in accordance with the applicable collective bargaining agreement.  However, all disciplinary action shall be undertaken in accordance with the following principles:

A.  <u>Reasonable Work Rules</u>.  The Department's directives and procedures shall be reasonably related to the orderly, efficient and safe operation of the Department's business.

B.  <u>Fair Application of Rules</u>.  The Department shall apply its directives, procedures and orders fairly and without discrimination to all employees.

C.  <u>Fair Notice</u>.  The Department shall provide the employee with information concerning probable or possible disciplinary consequences for the employee's conduct.

D.  <u>Investigation</u>.  The Department, before disciplining an employee, shall conduct an appropriate investigation in accordance with Administrative Directive 1.10, Investigations, to determine whether the employee committed an offense as defined in Sections 8 through 11 of this Directive.

E.  <u>Sufficient Evidence</u>.  The decision to initiate the disciplinary action shall be based upon substantial proof of employee act(s) or omission(s) in accordance with Administrative Directive 1.10, Investigations.

F.  <u>Just Penalty</u>.  The degree of discipline imposed shall be related to the seriousness of the employee's offense and its impact upon the orderly, efficient and safe operation of the unit.

13.  <u>Just Cause Review</u>.  A review shall be conducted to determine if just cause exists for disciplinary action.  This determination shall be based on the following just cause standard:

A.  Did the employer give the employee forewarning or foreknowledge of the possible or probable disciplinary consequences of the employee's conduct?

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
|---|---|---|
| 2.6 | January 15, 1999 | 7     9 |
| TITLE | | |
| Employee Discipline | | |

employee shall be permitted time before the conference to consult
with the employee's representative.  If a bargaining unit employee
wishes to utilize a representative outside of the union, the
employee shall obtain a waiver of union representation from the
union.

D.    **Employee Representative Functions**.  The representative may
reasonably assist the employee during the conference.  However, a
representative cannot attempt to transform the conference into an
adversarial proceeding through unduly provocative questions or by
the tone or manner of the representative's conduct.  The employer
has no duty to bargain with a representative.

15.    **Leave of Absence Pending Investigation and/or Pre-Disciplinary
Conference**. The appointing authority may place an employee on leave of
absence with pay for up to 15 working days to permit an investigation
and/or pre-disciplinary conference of alleged serious non-criminal
misconduct which could constitute just cause for dismissal.  Such leave
shall only be utilized if the employee's presence at work could be
harmful to the public; the welfare, health or safety of inmates; the
employee or other state employees or state property.  Following a
decision to place the employee on such leave, the appointing authority
shall provide written notice to the employee stating the reasons for the
leave, the effective date of the leave and the duration of the leave
which shall not exceed 15 days.

Any employee who is the subject of criminal charges which upon
conviction would constitute just cause for dismissal may request a
voluntary leave of absence without pay pending the disposition of the
criminal charges.  In the event the criminal charges are not disposed of
during a one (1) year voluntary unpaid leave of absence, the employee
may request an extension of that leave.  The appropriate Division Head,
in consultation with the Director of Human Resources may, pending
disposition of criminal charges, the pendency of which would hamper the
completion of an independent administrative investigation and which upon
conviction of an employee would constitute just cause for dismissal,
place the employee on leave of absence with or without pay for up to 30
days, depending on the collective bargaining agreement.  Such leave
shall only be used if the employee's presence at work could be harmful
to the public, the welfare, health or safety of inmates, other state
employees or state property.  Following a decision to place the employee
on such leave, the appointing authority shall provide written notice to
the employee stating the reasons for the leave, the effective date of
the leave and the duration of the leave, which shall not exceed 30 days.
The leave may be extended for an additional 30 day period upon request
of the appropriate Deputy Commissioner and the approval of the
Commissioner based only on a showing that there are significant problems
which prevent the completion of an independent administrative
investigation of the underlying conduct.  Any leave may be terminated by
the Unit Administrator with a return to work order.

16.    **Decision**. The Commissioner, upon the recommendation of the appropriate
Deputy Commissioner, shall have responsibility for approving all
dismissals, demotions or suspensions, with the exception of disciplinary

| DIRECTIVE NO. 2.6 | EFFECTIVE DATE January 15, 1999 | PAGE OF 9    9 |
|---|---|---|

| TITLE |
|---|
| Employee Discipline |

      B.    <u>Demotion</u>. The effective date of a demotion shall not be earlier than two (2) weeks from the date of the notice.

      C.    <u>Suspension</u>. The effective date of a suspension shall be at a time determined by the appointing authority, commencing after oral or written notice of the determination to impose a suspension, so long as any oral notice is followed by the written notice required by this Directive.

19.    <u>Termination During Working Test Period</u>. An employee terminated during an initial working test period may not appeal the dismissal through the grievance procedure, but may file a request in writing with the Deputy Commissioner of Programs to seek reinstatement. A review shall be scheduled within 30 days of receipt by a three (3) member panel appointed by the Deputy Commissioner of Programs. The panel shall consist of a staff member from the Human Resources Unit at or above the level of Personnel Officer I, an Affirmative Action Unit representative and one (1) other supervisor. The panel shall submit its recommendation to the Director of Human Resources for final approval. The employee shall receive notification of the Department's decision within 14 days of receipt of the recommendation by the Director of Human Resources.

20.    <u>Exceptions</u>. Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
|---|---|---|
| 2.6 | January 15, 1999 | 8 |
| TITLE | | |
| Employee Discipline | | |

action below the level of dismissal for employee dependability issues, which shall be approved and administered by the Unit Administrator. The Complex Warden, with the review and concurrence of the Director of Human Resources, shall have responsibility for approving all other formal disciplinary action. In cases where there is disagreement between the Complex Warden and the Director of Human Resources, the Commissioner shall make final determination. All possible employee pre-disciplinary conferences and resulting action(s) shall normally be completed within 30 working days from receipt of the original, or amended, investigation report.

17. <u>Appeals</u>. Within one (1) week of a decision to reprimand, suspend, involuntarily demote, or dismiss an employee, the appointing authority shall provide written notice to the employee. The notice shall state the appointing authority's decision, the reasons for the decision, the effective date of the decision, and shall inform the employee of any right to further review or appeal.

Collective bargaining agreements give employees the right to file a grievance when they are disciplined. Any employee who is not included in any collective bargaining unit of state employees and who has achieved a permanent appointment may appeal to the employees' review board if said employee receives an unsatisfactory performance evaluation or is demoted, suspended or dismissed, or is aggrieved as a result of alleged discrimination, or unsafe or unhealthy working conditions or violations involving the interpretation and application of a specific state personnel statute or regulation.

Appointed officials may not avail themselves of the grievance procedures referenced herein.

Employees may file an affirmative action grievance or complaint based on alleged discrimination through the grievance procedure outlined in the Affirmative Action Policy statement in accordance with Administrative Directive 2.1, Equal Employment Opportunity and Affirmative Action.

18. <u>Effective Dates of Discipline</u>. Disciplinary action, except immediate dismissal, shall be effective as follows:

A. <u>Dismissal</u>. The effective date of a dismissal shall not be earlier than two (2) weeks from the date of the notice required above, except in cases of serious misconduct by an employee affecting the public, or affecting the welfare, health or safety of inmates or facilities, or of state employees, or the protection of state property, in which case the appointing authority may make the dismissal effective immediately upon the close of the pre-disciplinary conference. Less than two (2) weeks notice may also may be given to bargaining unit employees if such notice is permitted by the collective bargaining unit. The appointing authority shall state the specific reason for imposing immediate dismissal at the close of the pre-disciplinary conference and in the subsequent written notice of discipline.

| DIRECTIVE NO. 2.6 | EFFECTIVE DATE<br>January 15, 1999. | PAGE OF<br>6 |
|---|---|---|

| TITLE | Employee Discipline |
|---|---|

B.    Was the employer's rule or managerial order reasonably related to
the orderly, efficient, and safe operation of the Department?

C.    Did the employer, before disciplining an employee, investigate to
determine whether the employee did in fact violate or disobey a
rule or order of management?

D.    Was the employer's investigation conducted fairly and impartially?

E.    During the investigation, did the employer obtain substantial
evidence that the employee was guilty as charged?

F.    Has the employer applied its rules, orders, and penalties
evenhandedly and without discrimination to all employees?

G.    Was the degree of discipline administered by the employer in a
particular case reasonably related to: (1) the seriousness of the
employee's proven offense; (2) the record of the employee in his
or her service with the Department; and (3) the general discipline
standards applied by the employer?

14.    Pre-Disciplinary Conference.  Upon completion of the investigation, a
pre-disciplinary conference shall be held for any permanent employee
whose employment is subject to the "just cause" standard.  The
conference shall be conducted by a Unit Administrator or designee who
has a significant role in the decision making process.

A.    Scope.  At the conference, the employee shall be provided: (1) an
oral or written notice of charges; (2) an explanation of the
evidence obtained during the investigation; and (3) an opportunity
to present the employee's case concerning the disciplinary
charges.

B.    Notice.  If written notice is given, it may be mailed, return
receipt requested, or hand delivered to the employee at work.  If
the notice is mailed, the time of the conference when the employee
shall be given an opportunity to respond to the charges shall be
no sooner then five (5) business days following the mailing of the
notice unless mutually agreed upon by the parties.  If the notice
is hand delivered to the employee at work or given orally, the
time of the conference when the employee shall be given an
opportunity to respond to the charges may be any time following
receipt of the notice, including immediately following the receipt
of the notice unless the complexity of the charges requires
additional time.  In such case the employee may request and be
granted a reasonable amount of time before being required to
respond, normally within 48 hours of the notice.  If an employee
declines or fails to attend the pre-disciplinary conference, the
appointing authority may proceed with disciplinary action
consistent with the notice provided under this Directive.

C.    Representation.  An employee who receives a pre-disciplinary
conference may have representation if the employee so chooses.
Under certain collective bargaining agreements, the employee must
be notified of the employee's right to have representation.
However, representation shall be limited to those situations when
the employee reasonably believes the conference shall result in
disciplinary action.  The employee may choose the union
representative but cannot insist upon a specific representative
who may not be available through no fault of the employer.  The

| DIRECTIVE NO. 2.6 | EFFECTIVE DATE January 15, 1999 | PAGE OF 4    9 |
| --- | --- | --- |
| TITLE | | |
| | Employee Discipline | |

A.    Failure to follow a direction or instruction.
B.    Failure to observe internal security procedures with no escape resulting.
C.    Reading unauthorized material on a post.
D.    Failure to follow written Department or Unit Directives  or post orders, with no consequence resulting.
E.    Failure to report an incident.
F.    Verbal altercation with another employee.

9.    Offenses Resulting in Suspension and/or Disciplinary Demotion.  The following offenses shall normally result in a suspension and/or disciplinary demotion for the first offense or repeated lesser offenses:

A.    Failure to follow an order.
B.    Failure to follow written Department or Unit Directives resulting in severe consequences.
C.    Inattentiveness to duty.
D.    Excessive use of force with mitigating circumstances.
E.    Leaving post without proper relief.
E.    Fraudulent use of sick time.
G.    Loss of security equipment.
H.    Failure to observe security procedures permitting a potential escape.

10.    Offenses Resulting in Dismissal.  The following offenses or repeated lesser offenses shall normally result in dismissal:

A.    Failure to follow a direct order.
B.    Sleeping on duty.
C.    Excessive use of force with no mitigating circumstances.
D.    Conviction of a felony.
E.    Conviction of a misdemeanor committed while on duty.
F.    Conviction of a misdemeanor committed off duty which could impact upon the performance of job responsibilities.
G.    Offensive or abusive conduct toward the public, co-workers, or inmates.
H.    Negligence resulting in an escape.
I.    Fraud or collusion in connection with any examination or appointment in the classified service.
J.    Theft, willful neglect or misuse of any state funds, property, equipment, material or supplies.
K.    Deliberate violation of any federal or state statute or regulation or agency rule depending upon severity of offense or place of occurrence.
L.    Absence without leave for five (5) or more working days or failure to return to duty within five (5) working days following authorized leave.
M.    Possession of, use of and/or intoxication from alcohol or illegal drugs while on duty.
N.    Neglect of duty, or other employment related misconduct.
O.    Insubordination, including but not limited to failure to work overtime if directed to do so.

Employee Discipline

C.  <u>Burden of Proof</u>.  The responsibility placed upon one of the
parties to prove the correctness or truth of the allegations made.

D.  <u>Confidential Employee</u>.  A public employee who would have access to
confidential information used in collective bargaining.

E.  <u>Contract Employee</u>.  An individual working under the terms of a
personal services agreement or for an employee who has a contract
to provide services.

F.  <u>Employee</u>.  An individual holding a position in the classified or
unclassified service of the state, whether full time or part time,
for which compensation is paid, who has been appointed to that
position following successful completion of a working test period.

G.  <u>Grievance Procedure</u>.  The steps prescribed in the various
collective bargaining agreements and State Personnel Act and
Regulations for the handling of a grievance.  The intent of the
process is to settle a complaint, customarily an allegation that
the contract has been misinterpreted or misapplied.

H.  <u>Initial Investigation</u>.  An inquiry into an alleged incident in
which the findings may be sufficient to take disciplinary action
or result in a more formal investigation.

I.  <u>Just Cause</u>.  Rationale sufficient to substantiate disciplinary
action upon an employee.

J.  <u>Past Practice</u>.  A mutually recognized and consistent employer
response to a given set of workplace circumstances over an
extended period of time.

K.  <u>Unclassified Service</u>.  An office or position in the state service
which is not in the classified service.

L.  <u>Unfair Labor Practice</u>.  Conduct on the part of either union or
management that violates provisions of national or state labor
relations acts.

M.  <u>Working Test</u>.  A trial working period to determine whether or not
such employee merits permanent appointment.

4.  <u>Supervisor Responsibilities</u>.  Each supervisor shall be responsible for
maintaining proper discipline within the supervisor's work unit.
Discipline shall be used only to correct problems, maintain the unit's
order and/or deter negative behavior.

Disciplinary problems shall be dealt with promptly when they arise.
Discipline shall be administered on the basis of substantiated facts.
Any disciplinary action taken shall be related to the offense. The Unit
Administrator shall ensure that a written record of the incident is
maintained.  Prior to the imposition of discipline, an investigation and
pre-disciplinary conference for a permanent employee shall be conducted.
Disciplinary action shall be taken consistent with this Directive and
any applicable collective bargaining agreement, State regulation, policy
or procedure.

5.  <u>Pre-Disciplinary Resolution</u>.  Informal discussions and formal counseling
shall be used whenever practicable.  Additional training may be
considered if it appears the employee could benefit and performance is
likely to improve.  However, formal disciplinary action shall be taken
when, it is determined further training and counseling would not be
effective or the incident is of such magnitude that formal discipline is
required.



| State of Connecticut Department of Correction | DIRECTIVE NUMBER | EFFECTIVE DATE | PAGE 1 OF |
|---|---|---|---|
| | 2.17 | March 15, 2000 | 5 |

**ADMINISTRATIVE DIRECTIVE**

| | SUPERSEDES: Employee Conduct – 5/17/99 |
|---|---|
| APPROVED BY    2/18/00 | TITLE:    Employee Conduct |

1. **Policy.** Each employee of the Department of Correction shall engage in appropriate and ethical conduct while carrying out official duties and while engaged in off duty activities which directly reflect on the Department.

2. **Authority and Reference.**

   A. Connecticut General Statutes, Sections 1-80 through 1-89, 5-266a through 5-268, 18-81, 53a-65, 53a-71 and 53a-73a.
   B. American Correctional Association, Standards for Administration of Correctional Agencies, Second Edition, April 1993, Standards 2-CO-1C-01 and 2-CO-1C-04.
   C. American Correctional Association, Standards for Adult Correctional Institution, Third Edition, January 1990, Standards 3-4061 and 3-4067.
   D. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-1A-21, 3-ALDF-1C-15 and 3-ALDF-1C-23.
   E. American Correctional Association, Standards for Adult for Probation and Parole Field Services, Third Edition, August 1998, Standard 3-3047.
   F. American Correctional Association, Standards for Correctional Training Academies, Standard 1-CTA-1C-01.
   G. Hatch Act, 5 USC, Sections 1501 through 1508.
   H. Administrative Directives 6.2, Facility Post Orders and Logs; 9.6, Inmate Grievances; and 10.7, Inmate Communication.

3. **Definition.** For the purposes stated herein, the following definition applies:

   **Immediate Family.** A spouse, parent or step parent, child or step child, grandparent or step grandparent, sibling or step sibling, grandchild or step grandchild.

4. **Employee Responsibility.** Each employee of the Department shall act in a professional, ethical and responsible manner.

   **Chain of Command.** Each Department employee shall become familiar with the tables of organization depicting the Department and Unit chain of command. Each employee shall show respect to any ranking member of the Department and shall obey any lawful order of a supervisor. An employee given an instruction or order which conflicts with a previous instruction or order shall inform the present supervisor of the conflict and follow the order as directed.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
|---|---|---|
| 2.17 | March 15, 2000 | 3    5 |

TITLE

Employee Conduct

20. Report immediately any threat, act of intimidation, harassment, physical or verbal abuse or assault to a supervisor.

B. The following behavior shall be strictly prohibited:

1. Any act that jeopardizes the security of the unit, health, safety, or welfare of the public, staff or inmates.

2. Excessive or unnecessary use of force.

3. Unauthorized possession of non-department issued firearms or other weapon while on duty or state property.

4. Convey unauthorized items into or out of a facility, or other correctional unit.

5. Sleeping or inattentiveness while on duty.

6. Unauthorized distractions while on duty, e.g., reading materials, radios or televisions.

7. Abuse of sick time, accrued leave or workers' compensation.

8. Report to work under the influence of alcohol or illicit drugs, or consume alcohol while on duty or while in uniform.

9. Enter into a correctional unit when off duty unless previously authorized.

10. Engage in abusive or obscene language, threats and/or intimidating behavior.

11. Engage in unprofessional or illegal behavior, both on and off duty, that could in any manner reflect negatively on the Department of Correction.

12. Engage in any activity, which would conflict with the proper discharge of or impair the independence of judgment in the performance of duty.

13. Engage in bartering, gambling or games of chance with inmates.

14. Engage in retaliation or reprisal against an inmate for engaging in activities that are protected by law or directive. Such protected activities include, but are not limited to: filing a grievance in accordance with Administrative Directive 9.6, Inmate Grievances; accessing courts; and engaging in privileged correspondence in accordance with Administrative Directive 10.7, Inmate Communication.

15. Engage in undue familiarity with inmates which includes, but shall not be limited to, the following:

   a. any sexual contact between a staff member and an inmate and/or person under the Department's supervision, or continuing criminal sanction (e.g., parole, probation);

   b. sexualizing a situation without physical touching such as partaking in activities involving suggestive or pornographic photographs, suggestive or explicit letters or behavior which provides sexual gratification;

   c. holding a position of supervisory of disciplinary authority and participating in inappropriate sexual behaviors or undue familiarity with an inmate;

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 2.17 | March 15, 2000 | 5 | 5 |

| TITLE |
|---|
| Employee Conduct |

6.  **Supervision of Family Members.**  A Department employee shall not be employed in any position that places the employee above or under the chain of command, direct or functional, of any immediate family member or cohabitant, nor shall the employee be placed above or under the chain of command, direct or functional, of any immediate family member of the employee's spouse or cohabitant.  A relationship between family members who are not immediate family as defined in Section 3 of this Directive may preclude placement of an employee in a chain of command.  Such relationship shall be evaluated by the appropriate Deputy Commissioner on a case by case basis.  Any employee who becomes romantically linked to another in the chain of command, direct or functional, shall notify the Unit Administrator in writing in order to make assignments consistent with the principles noted above.  Similar principles shall apply to the supervision of contract employees, and the awarding, or advocating the award, of a contract to related parties as noted above.

7.  **Reporting Code Violations.**  Each Department employee shall report to a supervisor or appropriate personnel any policy violation or breach of professional conduct involving the public, staff or inmates under the jurisdiction of the Department of Correction.

8.  **Exceptions.**  Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

| DIRECTIVE No. | EFFECTIVE DATE | PAGE OF | |
|---|---|---|---|
| 2.17 | March 15, 2000 | 4 | 5 |

| TITLE | |
|---|---|
| | Employee Conduct |

    d.    personal involvement in an inmate's private or family matters outside assigned professional duties;

    e.    performance of personal favors for inmates outside assigned professional duties;

    f.    discuss with an inmate any matter pertaining to the inmate's crime(s) or the crime(s) of other inmates (except as required pursuant to official business);

    g.    discuss with an inmate personal and/or business matters of other staff;

    h.    discuss security operations of a facility with an inmate;

    i.    inconsistently enforced facility rules to favor an inmate or group of inmates;

    j.    have personal work done by an inmate;

    k.    visit, correspond with or accept telephone calls from an inmate who is under the custody of the Department (except for an immediate family member and when authorized by the Facility Administrator);

    l.    house an inmate who is under the custody of the Department (e.g., while inmate is on furlough, community release, continuing criminal sanction, etc.), at the staff member's home (except for an immediate family member and when authorized by the Facility Administrator); and

    m.    enter into a personal or business agreement with an inmate, including, but not limited, to acting as a bail bondsman for an inmate.

16. Engage in behavior which is sexually, emotionally, or physically abusive toward the public, staff or inmates.

17. Unauthorized appropriation or use of any property belonging to the public, state or an inmate.

18. Release of any confidential information or unauthorized or inaccurate release of information, records, or documents.

19. Falsification, unauthorized alteration, or destruction of documents, log books, and other records, including job applications.

20. Use official position, uniform, identification or badge to gain any personal advantage or an advantage for another in any improper or unauthorized manner.

21. Engage in conduct that constitutes, or gives rise to, the appearance of a conflict of interest.

22. Unauthorized acceptance of any item or service for oneself or family members, including but not limited to, a gift, loan, political contribution, reward or promise of future employment.

23. Engage in any political activities, which conflict with state and federal laws to include the Hatch Act.

24. Failing to follow a lawful order.

25. Engaging in insubordination.

26. Failing to cooperate with a departmental investigation.

27. Lying or giving false testimony during the course of a departmental investigation.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
|---|---|---|
| 2.17 | March 15, 2000 | 2    5 |

| TITLE |
|---|
| Employee Conduct |

5. <u>Standards of Conduct.</u>

    A.   Each Department employee shall:

        1. Comply with all federal and state laws, regulations and/or statutes, Department and Unit Directives and lawful instructions/orders.

        2. Enforce all rules, regulations and policies of the Department as appropriate.

        3. Ensure that a safe, secure and sanitary work environment is maintained.

        4. Remain alert, aware of, and responsive to the surroundings at all times.

        5. Remain on assigned post until properly relieved and/or remain at worksite as required.

        6. Comply with official notices and roll call and other instructions.

        7. Meet all employee responsibilities for dependability.

        8. Report any arrest, or receipt of any summons received from a law enforcement agency or court, and subsequent disposition, including conviction, to an appropriate supervisor on or by the next scheduled work day following the arrest, but no later than 48 hours of the arrest or receipt of summons. This requirement shall not apply to summons received for minor traffic violations. An employee shall submit supporting documentation of arrest, receipt of summons or disposition. Any employee on extended leave shall report any arrest or receipt of summons, and subsequent disposition, including conviction, to the Unit Administrator within 48 hours.

        9. Inform the appropriate supervisor and the Human Resources Unit, in writing, of any change of address and/or telephone number within 48 hours.

       10. Report any condition or use of medication the employee is taking which may affect job performance or judgment to an appropriate supervisor.

       11. Report any medication brought into the worksite and maintain any personal property and medication in a secure manner.

       12. Act in a professional manner showing respect to other employees and the public.

       13. Respect and protect the rights of inmates.

       14. Maintain good stewardship of all state property and equipment.

       15. Maintain appropriate demeanor at all times.

       16. Be courteous and accommodating in all dealings with the public, to include telephone etiquette.

       17. Within no later than 48 hours report in writing to a supervisor when a friend or relative is or becomes incarcerated.

       18. Cooperate fully and truthfully in any inquiry or investigation conducted by the Department of Correction and any other law enforcement or regulatory agency.

       19. Appropriately file information as required by the State Ethics Commission.