UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUIS FERNANDEZ                :
                             :              PRISONER
     v.                      :  Case No.  3:02cv2252(CFD)
                             :
JOHN ARMSTRONG, et al.[1]     :


RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Luis Fernandez, is currently confined at the State of Connecticut MacDougall Correctional Institution, in Suffield, Connecticut.  He commenced this civil rights action pursuant to 28 U.S.C. § 1915.  He alleges that in August, 2002, while he was confined at the Cheshire Correctional Institution, the defendants failed to provide him with items necessary to enable him to brush his teeth and to shower and failed to provide him with postage-paid envelopes in which to mail documents to the court.  Pending before the court is the defendants' motion for summary judgment.  For the reasons set forth below, the motion is granted.

I.   Standard of Review

"The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether

---

[1]The defendants named in the amended complaint are: Commissioner John Armstrong, Warden Hector Rodriguez, Grievance Coordinator Ahmed, C.T.O. Wanda Booker, Counselor Gallick and Unit Manager Hannah. They were all employed by the Connecticut Department of Correction in various capacities at all times relevant to the Plaintiff's complaint.

there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  Not all factual disputes are material.  The court considers the substantive law governing the case to identify those facts which are material.  "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  An asserted dispute over a material fact is considered "genuine," so as to defeat the motion for summary judgment, "if the evidence is such that a reasonable jury could return a verdict for the non-moving

2

party." <u>McCarthy v. American Int'l Group, Inc.</u>, 283 F.3d 121, 124 (2d Cir. 2002).

Even though the burden is on the moving party to demonstrate the absence of any genuine factual dispute, the party opposing summary judgment "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." <u>Podell v. Citicorp Diners Club, Inc.</u>, 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks and citations omitted). It "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." <u>Fujitsu Ltd. v. Federal Express Corp.</u>, 247 F.3d 423, 428 (2d Cir. 2002) (internal quotation marks and citation omitted). Instead, the non-moving party must produce admissible evidence that supports its pleadings. <u>See</u> <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 289-90 (1968). A "'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." <u>Niagara Mohawk Power Corp. v. Jones Chem., Inc.</u>, 315 F.3d 171, 175 (2d Cir. 2003) (quoting <u>Anderson</u>, 477 U.S. at 252).

In reviewing a motion for summary judgment the court resolves all ambiguities and draws all inferences in favor of the nonmoving party. See Niagara Mohawk, 315 F.3d at 175. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991). A motion for summary judgment cannot be defeated "merely . . . on the basis of conjecture or surmise." Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citation and internal quotation marks omitted).

II.  <u>Facts</u>[2]

On August 7, 2002, the plaintiff Luis Fernandez filed a prison grievance claiming that on July 29, 2002, he had requested soap, a "care package"[3] and postage-paid envelopes from defendant Booker.  Fernandez claimed that he did not have sufficient funds in his prisoner account to purchase hygiene items from the commissary.  Defendant Warden Rodriguez denied the grievance on September 12, 2002, because as of August 7, 2002, Fernandez did not meet the indigency standard necessary to receive free soap and a "care package".  Under State of Connecticut Department of Correction Administrative Directive 6.10(3)(C), an indigent inmate is defined as "[a]n inmate who has less than five dollars on account at admission or whose account has not exceeded five dollars for the previous 90 days."

On August 13, 2002, Fernandez submitted an inmate request to defendant Gallick for a "care package," special soap and postage-

---

[2]The facts are taken from the defendants' Local Rule 56(a)1 Statement of Material Facts Not in Dispute [doc. # 40-2]; the plaintiff's Local Rule 56(a)2 Statement [doc. # 42]; the plaintiff's Affidavit and exhibits attached to the affidavit [doc. # 45-2], the Affidavit of Jonathan Hall and the exhibits attached to the affidavit [doc. # 40-4] and the exhibits attached to the plaintiff's amended complaint  [doc. # 9].


[3]A "care package" apparently contains personal hygiene items.

paid legal and "social" envelopes[4].  That same day, Gallick
denied Fernandez's request because he did not meet the indigency
standard.  Fernandez wrote to Gallick again on August 14, 2002,
with the same requests.  That same day, defendant Ahmed provided
the plaintiff with a "care package" including a comb, soap,
shampoo, toothpaste and a toothbrush.

On August 19, 2002, Fernandez filed an emergency grievance
stating that Gallick had not provided him envelopes and bath soap
in response to his August 14, 2002 request.  Defendant Rodriguez
rejected the grievance because it was not an emergency and noted
that Fernandez had received a "care package" on August 14, 2002.

Under State of Connecticut Department of Correction
Administrative Directive 10.7(4)(D), every inmate is responsible
for paying "personal mailing expenses," unless an inmate is
indigent.  "An indigent inmate as defined in Administrative
Directive 6.10 . . . shall be permitted two (2) free social
letters each week, and five (5) letters per month addressed to
the court or attorneys. . . ."  On August 22, 2002, Fernandez
received five legal envelopes with free postage.  On August 29,
2002, Fernandez received two "social" envelopes with free postage
and one bar of soap.  On September 5, 2003, Fernandez received
two "social" envelopes and two legal envelopes with free postage.

---

[4]"Social" envelopes are for mailing non-legal
correspondence.

On September 9, 2003, Fernandez received two "social" envelopes with free postage and a bar of soap.

III. <u>Discussion</u>

The defendants move for summary judgment on seven grounds. They argue that (1) the Eleventh Amendment bars any claims for damages against the defendants in their official capacities; (2) the State is not a "person" within the meaning of 42 U.S.C. § 1983; (3) the plaintiff fails to state a claim upon which relief may be granted; (4) the court should decline to exercise supplemental jurisdiction over any state law claims asserted against them; (5) the plaintiff has failed to allege the personal involvement of defendant Armstrong in the denial of his requests for hygiene products and envelopes; (6) the plaintiff's request for injunctive relief is moot; and (7) the defendants are protected by qualified immunity.

A.   <u>Eleventh Amendment</u>

The defendants first argue that any claims seeking damages against them in their official capacities are barred by the Eleventh Amendment.  Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment.  <u>See</u> <u>Florida Dep't of State v. Treasure Salvors</u>, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment

7

immunity.  See Quern v. Jordan, 440 U.S. 332, 342 (1979).  The
Eleventh Amendment immunity, which protects the state from suits
for monetary relief, also protects state officials sued for
damages in their official capacity.  See Kentucky v. Graham, 473
U.S. 159 (1985).  A suit against a defendant in his official
capacity is ultimately a suit against the state if any recovery
would be expended from the public treasury.  See Pennhurst State
Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

      Fernandez sues the defendants in their official and
individual capacities.  To the extent that Fernandez sues the
defendants in their official capacities for monetary damages,
those claims are barred by the Eleventh Amendment.  The motion
for summary judgment is granted as to all claims for damages
against the defendants in their official capacities.

      B.   Claims Against State of Connecticut

      The defendants next argue that the State of Connecticut is
not a "person" within the meaning of 42 U.S.C. § 1983.  The
Supreme Court has held that the term "person" does not include a
state or its agencies.  See Will v. Michigan Dep't of State
Police, 491 U.S. 58, 66 (1989).  Also, states are protected from
suit by the Eleventh Amendment unless they waive its protection.
See id.  Connecticut has not waived its Eleventh Amendment
immunity from suit in this circumstance.  See Krozer v. New
Haven, 212 Conn. 415, 562 A.2d 1080 (1989), cert denied, 493 U.S.

8

1036 (1990).  Accordingly, to the extent that any of the claims against the defendants may be construed as a claim against the State of Connecticut, those claims are dismissed.

C.    Failure to State a Claim

The defendants argue that Fernandez's claims that in August 2002, they deprived him of basic hygiene items and postage-paid envelopes, failed to promulgate directives, and failed to comply with grievance directives do not state a claim upon which relief may be granted.  The court will address each claim separately.

1.    Hygiene Items

Fernandez alleges that in August 2002, the defendants failed to timely respond to his requests for a package containing hygiene items including a toothbrush, toothpaste, soap and shampoo.  The defendants argue that Fernandez's claim does not allege a violation of his Eighth Amendment rights.

The Supreme Court has defined the contours of the Eighth Amendment protection against cruel and unusual punishment, made applicable to the states by the Fourteenth Amendment, as follows: "The Eighth Amendment's bar on inflicting cruel and unusual punishments...'proscribe[s] more than physically barbarous punishments.'  It prohibits penalties that are grossly disproportionate to the offense as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity and decency."  Hutto v. Finney, 437 U.S. 678,

685 (1978) (citations omitted).  See also Rhodes v. Chapman, 452
U.S. 337, 347 (1981).  There is no static test for determining
whether conditions of confinement are cruel and unusual.  See
Rhodes, 452 U.S. at 346.  The Eighth Amendment must "draw its
meaning from the evolving standards of decency that mark the
progress of a maturing society."  Id.

The Second Circuit, in addressing the needs protected by the
Eighth Amendment, has stated that sentenced prisoners are
entitled only to "adequate food, clothing, shelter, sanitation,
medical care and personal safety."  Wolfish v. Levi, 573 F.2d
118, 125 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v.
Wolfish, 441 U.S. 520 (1979); Lareau v. Manson, 651 F.2d 96, 106
(2d Cir. 1981).  "To the extent that such conditions are
restrictive and even harsh, they are part of the penalty that
criminal offenders pay for their offenses against society."
Rhodes, 452 U.S. at 347.  Not every governmental action affecting
the interests or well-being of a prisoner is actionable under the
Eighth Amendment.  "To be cruel and unusual punishment, conduct
that does not purport to be punishment at all must involve more
than ordinary lack of due care for the prisoner's interests or
safety."  Whitley v. Albers, 475 U.S. 312, 319 (1986); see also
Gaston v. Coughlin, 249 F.3d 156, 163 (2d Cir. 2001).

To prevail on a claim that conditions of confinement
constitute cruel and unusual punishment, an inmate must establish

objective and subjective components of the deliberate
indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66
(2d Cir. 1994).  First, the inmate must show that he has suffered
a "sufficiently serious" deprivation in objective terms, that is,
that he has been deprived of the minimal necessities of life.
Wilson v. Seiter, 501 U.S. 294, 298 (1991).  An inmate also must
present evidence that, subjectively, the charged prison official
acted with "a sufficiently culpable state of mind."  Hathaway, 37
F.3d at 66.  "[A] prison official does not act in a deliberately
indifferent manner unless that official 'knows and disregards an
excessive risk to inmate health or safety; the official must both
be aware of facts from which the inference could be drawn that a
substantial risk of serious harm exists, and he must also draw
the inference.'"  Id. (quoting Farmer v. Brennan, 511 U.S. 825,
837 (1994).

On August 7, 2002, Fernandez submitted a grievance to a
grievance coordinator requesting a package containing a tooth
brush, toothpaste, soap and shampoo as well as postage-paid
envelopes.  Fernandez complained that defendant Booker had failed
to respond to his prior request for these items[5].  On August 14,
2002, defendant Ahmed provided Fernandez with the hygiene items.
Fernandez claims that he was not able to shower or wash for five

_____

[5]Although Fernandez seems to suggest in his affidavit in
opposition to the motion for summary judgment at ¶9 that he did
not have the hygiene supplies for four months, his grievance
states that it was only from July 29, 2002.

days due to the delay in receiving the hygiene items.  Fernandez
states that he suffered emotional distress as a result of the
defendants' actions.

The Second Circuit has held that the deprivation of
toiletries, particularly toilet paper, constitutes an
unconstitutional condition of confinement in violation of the
Eighth Amendment.  See Wright v. McMann, 387 F.2d 519 (2d Cir.
1967)(detention of an inmate in strip cell with no toilet paper
unconstitutional).  Courts, including the Second Circuit, have
generally held, however, that temporary deprivations of
toiletries does not violate the Eighth Amendment.  See Trammell
v. Keane, 338 F.3d 155, 165 (2d Cir. 2003) ("[d]eprivation of
other toiletries for approximately two weeks--while perhaps
uncomfortable--does not pose such an obvious risk to an inmate's
health or safety to suggest that the defendants were "aware of
facts from which the inference could be drawn that a substantial
risk of serious harm exist[ed], and [that they also drew] the
inference.") (citing Farmer, 511 U.S. at 837; Lunsford v.
Bennett, 17 F.3d 1574, 1579- 80 (7th Cir. 1994)(dismissing
claims of inmates denied toilet paper, personal hygiene items and
cleaning supplies for 24-hour period); Harris v. Fleming, 839 F.
2d 1232, 1235 (7th Cir. 1988) (holding denial of soap, toothpaste
and toothpaste for ten days did not violate the Eighth
Amendment); Jackson v. DeTella, 998 F. Supp. 901, 905 (N.D. Ill.

12

1998) (eight-day deprivation of hygiene items and bedding did not violate prisoner's constitutional rights); Martin v. Lane, 766 F. Supp. 641, 648 (N.D. Ill. 1991) (deprivation of laundry services and hygienic supplies for between three and eighteen days did not constitute a violation of inmate's Eighth Amendment rights); Gilland v. Owens, 718 F. Supp. 665, 685 (W.D. Tenn. 1989)("[s]hort term deprivations of toilet paper, towels, sheets, blankets, . . . toothpaste, toothbrushes, and the like do not rise to the level of a constitutional violation.").

Here, Fernandez filed a grievance on August 7, 2002, complaining that defendant Booker had failed to respond to his July 29, 2002, request for envelopes and personal hygiene supplies. On August 14, 2002, defendant Ahmed provided Fernandez with a package, including toothpaste, a toothbrush, shampoo and soap. Thus, even assuming the truth of Fernandez's allegations, he did not have hygiene items for sixteen days. Fernandez does not allege that he suffered any physical injury as a result. Based on the Second Circuit's holding in Trammel, the court concludes that Fernandez's allegations concerning the denial of hygiene supplies for a relatively short period of time in July and August 2002 do not constitute a serious deprivation of Fernandez's necessities. Thus, the plaintiff's claims fail to state a violation of the Eighth Amendment.

Fernandez also claims that he was unable to shower for approximately five days.  Courts have generally held that a temporary deprivation of the opportunity to shower does not violate the Eighth Amendment.  See McCoy v. Goord, 255 F. Supp.2d 233, 260 (S.D.N.Y. 2003) ("a two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs'") (citation omitted); Roberts v. Snyder, No. CIV. A. 00-742-SLR, 2001 WL 655436, at *5 (D. Del. March 27, 2001) (holding denial of opportunity to shower for five days "did not deprive plaintiff of 'minimal civilized measure of life's necessities.'") (citation omitted); Briggs v. Heidlebaugh, 1997 WL 318081, *3 (E.D. Pa. May 21, 1997) (denial of shower for two weeks not a constitutional violation); Young v. Scully, Nos. 91 Civ 4332, 91 Civ. 4801, 91 Civ. 6768, 91 Civ. 6769, 1993 WL 88144, at * 4-*5 (S.D.N.Y. Mar. 22, 1993) (deprivation for a period of several days of exercise, shower, hot water, cell cleaning equipment, wardrobe, toiletries and hygiene items did not rise to level of extreme deprivation); Lock v. Clark, No. S90-327, 1992 WL 559660, at *9 (N.D. Ind. March 17, 1992) (no constitutional violation where an inmate was held without soap and hygienic items for seven days, denied access to a shower, given only one and a half rolls of toilet paper, and left to wear only his undershorts); Tinsley v. Vaughn, Civ. A. No. 90-0113, 1991 WL 95323 at *4 (E.D. Pa. May 29, 1991) (confining prisoner to cell and suspending

shower privileges for twelve days not a constitutional deprivation).

Fernandez has submitted no evidence to show that he suffered any physical effects or injuries due to the fact that he did not shower for approximately five days in August 2002. Instead, Fernandez alleges that he suffered emotional distress as a result of the defendants' failure to provide him with a shower for that five-day period. Under 42 U.S.C. § 1997e an inmate is prohibited from bringing an action in federal court which alleges mental or emotional injuries without a prior showing of a physical injury.[6] Because Fernandez has not alleged that he suffered any prior physical injury in conjunction with his claim of emotional distress, his allegations that he suffered emotional distress as a result of his inability to shower for five days fail to state a claim upon which relief may granted.

The court concludes that Fernandez's inability to shower for a short period of time did not amount to a serious deprivation of plaintiff's "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Accordingly, Fernandez has failed to meet his burden of demonstrating that the

---

[6] 42 U.S.C. § 1997e(e) provides: "Limitation on recovery.-- No federal civil action may be brought by a prisoner in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

defendants violated his rights under the Eighth Amendment.  The motion for summary judgment is granted as to this claim.

    2.  <u>Access to Envelopes</u>

Fernandez also alleges that the defendants failed to provide him with postage-paid envelopes in August 2002.  He claims that without envelopes he could not access the courts.  The defendants argue that Fernandez has failed to allege that he suffered an actual injury or was prejudiced in any way due to the temporary denial of access to postage-paid envelopes.

"It is well established that inmates have a constitutionally protected right of access to the courts." <u>Smith v. Armstrong</u>, 986 F. Supp. 40, 46 (D. Conn. 1996) (citing <u>Bounds v. Smith</u>, 430 U.S. 817, 822-25 (1977)).  In <u>Lewis v. Casey</u>, 518 U.S. 343 (1996), the Supreme Court clarified what is encompassed in an inmate's right of access to the courts and what constitutes standing to bring a claim for the violation of that right. First, the Court held that to show a violation of his right of access to the courts, an inmate must allege an actual injury. <u>Id.</u> at 349.  The fact that an inmate may not be able to litigate effectively once his claim is brought before the court is insufficient to demonstrate actual injury.  <u>Id.</u> at 355.  Rather, the inmate must show that he was unable to file the initial complaint or petition, or that the complaint he filed was so technically deficient that it was dismissed without a

consideration of the merits of the claim.  Id. at 351.  In

addition, the Court observed that "the injury requirement is not

satisfied by just any type of frustrated legal claim."  Id. at

354.

The record reflects that Fernandez submitted a request to

defendant Gallick for legal and "social" envelopes on August 14,

2002, but did not receive any envelopes in response to his

request.  He filed an emergency grievance on August 19, 2002,

complaining that defendant Gallick had not provided him with the

envelopes.  Defendant Myers rejected the grievance because it did

not constitute an emergency.  Fernandez then filed an appeal of

the grievance on August 23, 2002.  The Free Postage Envelope Log

for Fernandez's housing unit reflects that Fernandez received

five postage-paid legal envelopes on August 22, 2002 and two

postage-paid social envelopes on August 29, 2002.

Fernandez does not identify a specific case or claim that he

was unable to file or allege that he missed any deadlines in any

of his existing cases or that any cases were dismissed due to his

lack of access to postage-paid envelopes for approximately a week

in August 2002.  Fernandez has failed to meet his burden of

demonstrating that he suffered an injury as a result of the

defendants' failure to provide him with postage-paid legal

envelopes in August 2002.  Accordingly, the motion for summary

judgment is granted as to the claim of denial of access to the courts.

Fernandez also claims that defendant Gallick failed to provide him with postage-paid envelopes for social correspondence. The Supreme Court has held that prisoners have a First Amendment right to send non-legal mail to individuals outside of prison. See Procunier v. Martinez, 416 U.S. 396, 408-09 (1974). Other Circuit and District Courts have held, however, that the First Amendment does not require prison officials to provide inmates with free postage. See Lindell v. McCallum, 352 F.3d 1107, 1111 (7th Cir. 2003) (prisons and jails have no constitutional duty to subsidize prisoner litigation with unlimited amounts of free postage or legal supplies); Van Poyck v. Singletary, 106 F.3d 1558, 1559-60 (11th Cir.) (indigent inmates do not have right to free postage for personal mail), cert. denied 552 U.S. 856 (1997); Hershberger v. Scaletta, 33 F.3d 955, 956-57 (8th Cir. 1994) (same); Walker v. Litscher, No. 02-C-0430-C, 2003 WL 23200259, at *3 (W.D. Wis. March 14, 2003) (prison officials "refusal to provide [inmate] with free postage does not violate the First Amendment"); Dawes v. Carpenter, 899 F. Supp. 892, 899 (N.D.N.Y. 1995) ("[T]he Constitution does not require the State to subsidize inmates to permit [personal] correspondence.")

DOC records show that at the time of Fernandez's request for postage paid envelopes on August 14, 2002, he was not indigent as that term is defined in the Department of Correction Administrative Directives.  Thus, he was not entitled to postage paid-envelopes.  After Fernandez met the requirements for indigency on August 20, 2002, prison officials provided him with legal envelopes on August 22, and social envelopes on August 29, 2002.  Although Fernandez disputes the issue of whether he was indigent before August 20, 2002, even if he were correct, no constitutional violation occurred for this short period of time.

Fernandez also does not provide information as to whom he intended to send mail using the envelopes for social correspondence or that he was unable to communicate to those individuals by other means during the two week period prior to receiving his postage-paid social envelopes.  Thus, Fernandez has not specifically alleged that the defendants actually prevented him from communicating with outsiders during that two week period.  See Davidson v. Mann, 129 F.3d 700, 701 (2d Cir. 1997) (holding that "[a]bsent a specific allegation indicating that the directive ha[d] significantly impaired Davidson's ability to communicate with outsiders," Davidson had not stated a civil rights claim under Section 1983).  Accordingly, Fernandez's claim of denial of postage-paid envelopes in August 2002 fails to state

a claim upon which relief may be granted.  The defendants' motion
for summary judgment is granted on this ground.

       3.  <u>Failure to Respond to Grievances</u>

     Fernandez alleges that defendants violated his
constitutional right to petition the government for redress of
grievances by failing to respond to the appeals of two
grievances pertaining to the defendants' alleged failure to
provide him with hygiene items and free envelopes.  In response,
defendants state that they are not arguing that Fernandez failed
to exhaust his administrative remedies as to the claims in
amended complaint.  They argue that interference with the right
to petition for redress of grievances states a claim for relief
only if the interference caused actual harm.

     State of Connecticut Department of Correction Administrative
Directive 9.6 governs the inmate grievance procedure.  <u>See</u>
<u>www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf.</u>  The directive governs
inmate access to grievance forms and describes the procedure for
timely resolution of grievances.

     In <u>Graham v. Henderson</u>, 89 F.3d 75, 80 (2d Cir. 1996), the
Second Circuit reiterated that the right to petition the
government for redress of grievances is guaranteed by the First
and Fourteenth Amendments.  A claim of intentional interference
with the right to petition the government is not actionable
unless the interference caused actual harm, though.  <u>See</u> <u>id.</u>  The

defendants do not argue that Fernandez has failed to exhaust his administrative remedies as to the claims in this action.  The claims concerning the denial of hygiene items and denial of free envelopes were addressed by the court in the preceding section of this ruling.  Thus, Fernandez has not demonstrated that he was harmed by the defendants' failure to respond to the appeal of two of his grievances.

To the extent that Fernandez's claims may be construed as alleging that defendants filed to comply with the procedures set forth in Administrative Directive 9.6, the claim is not cognizable.  This district has previously held that failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right.  See Fernandez v. Armstrong, Case No. 3:03CV583(JCH) (D. Conn. Dec. 7, 2004); Ruocco v. Tung, No. 3:02CV1443(DJS), 2004 WL 721716, at *14 (D. Conn. Mar 30, 2004); Hunnicutt v. Armstrong, 305 F. Supp. 2d 175, 188 (D. Conn. 2004) (grievance procedure).

The court has determined that the defendants have not violated Fernandez's constitutional rights when they temporarily failed to provide him with free hygiene items and free envelopes. Thus, Fernandez has not identified any constitutionally or federally protected right that was violated by defendants'

failure to comply with Department of Correction's grievance
procedures.  The court concludes that any claim that defendants
failed to comply with administrative directives does not
demonstrate the denial of a constitutionally or federally
protected right.  Accordingly, such a claim is not cognizable in
this civil rights action.  The defendants' motion for summary
judgment is granted as to any claim for failure to follow
institutional grievance procedures.

        4.   <u>Failure to Promulgate Directives</u>

     Fernandez contends that the defendants failed to promulgate
directives containing mandatory language to create a liberty
interest in humane prison conditions.  The court can discern no
constitutionally protected right to have correctional officials
promulgate such directives.

     In addition, defendants argue that even if such directives
existed, inclusion of mandatory language in a prison directive
does not, without more, give rise to a liberty interest protected
by the due process clause.  <u>See</u> <u>Sandin v. Connor</u>, 515 U.S. 472,
483 (1995).  An inmate has a protected liberty interest "only if
the deprivation . . . is atypical and significant and the state
has created the liberty interest by statute or regulation."  <u>Id.</u>
(citations and internal quotation marks omitted).  Accordingly,
the motion for summary judgment is granted as to Fernandez's
claim that the defendants failed to promulgate directives.

22

5.  Other Claims

Fernandez generally claims that the defendants retaliated against him for exercising his right of access to the courts and that mandatory language in the Department of Correction Administrative Directives created a liberty interest protected by the Due Process clause.  The defendants argue that Fernandez has failed to allege facts to put them on notice of the nature and basis of these claims.

a.  Retaliation Claim

To state a claim for retaliation, the plaintiff must allege facts demonstrating "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials."  Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). "[A]llegations which are nothing more than broad, simple, conclusory statements are insufficient to state a claim under § 1983."  Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987) (citing Koch v. Yunich, 533 F.2d 80, 85 (2d Cir. 1976); Fine v. City of New York, 529 F.2d 70, 73 (2d Cir. 1975)). Because of the "ease with which claims of retaliation may be fabricated," however, the court "examines prisoners' claims of retaliation with skepticism and particular care."  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).  "A claim of retaliation that is 'wholly conclusory' can be dismissed on the

pleadings alone." <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d
Cir.1996) (quoting <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir.
1983)).

Here, Fernandez simply states that the defendants retaliated
against him for exercising his right of access to the courts.
Fernandez fails to allege any facts or present any evidence to
suggest that there was a retaliatory motive for any of the
conduct of the defendants in response to his requests for hygiene
products and envelopes.  The court concludes that Fernandez has
failed to allege facts stating a claim for retaliation.
Accordingly, defendants' motion for summary judgment is granted
as to this claim.

   b.   <u>Due Process Claim</u>

Fernandez claims that Department of Correction
Administrative Directives contained mandatory language that
created liberty interests protected by the Due Process Clause of
the Fourteenth Amendment.  Fernandez states that the defendants
violated his rights under the Due Process Clause because they
failed to comply with the mandatory language in the
Administrative Directives.

As discussed earlier in this ruling, the Supreme Court has
held that mandatory language in a prison directive or regulation
does not in and of itself create a liberty interest.  <u>See</u> <u>Sandin</u>,
515 U.S. at 483 (inmate has a protected liberty interest "only if

24

the deprivation . . . is atypical and significant and the state has created the liberty interest by statute or regulation."). Furthermore, Fernandez fails to identify the Administrative Directives with which the defendants allegedly failed to comply. Without documentary support, his Due Process claim consists only of unsupported allegations that are conclusory at best.  Thus, Fernandez fails to state a claim of a violation of his Fourteenth Amendment Due Process rights.  The defendants' motion for summary judgment is granted as to this claim.

     E.   <u>State Law Claims</u>

    Defendants contend that the court should decline to exercise supplemental jurisdiction over any state law claims contained in the amended complaint.  The court agrees.

    Supplemental or pendent jurisdiction is a matter of discretion, not of right.  <u>See</u> <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 715-26 (1966).  Where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution to the state courts. <u>See</u> 28 U.S.C. § 1367(c)(3); <u>Giordano v. City of New York</u>, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).

    The court has dismissed all federal claims against the defendants.  Thus, the court declines to exercise supplemental jurisdiction over any state law on the ground that it has dismissed all claims over which it has original jurisdiction.

The motion for summary judgment is granted on this ground.

IV.  Conclusion

The defendants' Motion for Summary Judgment [**doc. #40**] is **GRANTED**.  The court declines to exercise supplemental jurisdiction over any state law claims raised by the plaintiff. See 28 U.S.C. § 1367(c)(3).  The Clerk is directed to enter judgment in favor of defendants and close this case.

**SO ORDERED** this 30th day of March, 2005, at Hartford, Connecticut.

                                    /s/ CFD_____
                                    Christopher F. Droney
                                    United States District Judge

26